# SHEPARD *v.* UNITED STATES

No. 03–9168.   Argued November 8, 2004—Decided March 7, 2005

JUSTICE SOUTER delivered the opinion of the Court, except as to Part III, concluding that enquiry under the ACCA to determine whether a guilty plea to burglary under a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, to the terms of a plea agreement or transcript of colloquy between judge and defendant in which the defendant confirmed the factual basis for the plea, or to some comparable judicial record of this information.   Guilty pleas may establish ACCA predicate offenses, and *Taylor*'s reasoning controls the identification of generic convictions following pleas, as well as convictions on verdicts, in States with nonge-

neric offenses. The ACCA nowhere provides that convictions in tried and pleaded cases should be regarded differently, and nothing in *Taylor*'s rationale limits it to prior jury convictions. This Court, then, must find the right analogs for applying *Taylor* to pleaded cases. The *Taylor* Court drew a pragmatic conclusion about the best way to identify generic convictions in jury cases. In cases tried without a jury, the closest analogs to jury instructions would be a bench-trial judge's formal ruling of law and finding of fact; in pleaded cases, they would be the statement of factual basis for the charge shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea. A later court could generally tell from such material whether the prior plea had "necessarily" rested on the fact identifying the burglary as generic. *Taylor, supra,* at 602. The Government's arguments for a wider evidentiary cast that includes documents submitted to lower courts even prior to charges amount to a call to ease away from *Taylor*'s conclusion that respect for congressional intent and avoidance of collateral trials require confining generic conviction evidence to the convicting court's records approaching the certainty of the record of conviction in a generic crime State. That was the heart of the *Taylor* decision, and there is no justification for upsetting that precedent where the Court is dealing with statutory interpretation and where Congress has not, in the nearly 15 years since *Taylor*, taken any action to modify the statute. Pp. 19–23, 26.

JUSTICE SOUTER, joined by JUSTICE STEVENS, JUSTICE SCALIA, and JUSTICE GINSBURG, concluded in Part III that the rule in the *Jones* v. *United States*, 526 U. S. 227, 243, n. 6, and *Apprendi* v. *New Jersey*, 530 U. S. 466, 490, line of cases—that any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury, absent a waiver by the defendant—is also relevant to ACCA sentencing. In a nongeneric State, the fact necessary to show a generic crime is not established by the record of conviction as it would be in a generic State when a judicial finding of a disputed prior conviction is made on the authority of *Almendarez-Torres* v. *United States*, 523 U. S. 224. Instead, the sentencing judge considering the ACCA enhancement would (on the Government's view) make a disputed finding of fact about what the defendant and state judge must have understood as the prior plea's factual basis, and the dispute raises the concern underlying *Jones* and *Apprendi:* the Sixth and Fourteenth Amendments guarantee a jury's standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase a potential sentence's ceiling. The disputed fact here is too far removed from the conclusive significance of a prior judicial record,

and too much like the findings subject to *Jones* and *Apprendi*, to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute. The rule of reading statutes to avoid serious risks of unconstitutionality therefore counsels the Court to limit the scope of judicial factfinding on the disputed generic character of a prior plea. Pp. 24–26.

JUSTICE THOMAS agreed that the Court should not broaden the scope of the evidence judges may consider under *Taylor* v. *United States*, 495 U. S. 575, because it would give rise to constitutional error, not constitutional doubt. Both *Almendarez-Torres* v. *United States*, 523 U. S. 224, and *Taylor*, which permit judicial factfinding that concerns prior convictions, have been eroded by this Court's subsequent Sixth Amendment jurisprudence. Pp. 26–28.

SOUTER, J., delivered an opinion, which was for the Court except as to Part III. STEVENS, SCALIA, and GINSBURG, JJ., joined that opinion in full, and THOMAS, J., joined except as to Part III. THOMAS, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 26. O'CONNOR, J., filed a dissenting opinion, in which KENNEDY and BREYER, JJ., joined, *post*, p. 28. REHNQUIST, C. J., took no part in the decision of the case.

*Linda J. Thompson*, by appointment of the Court, 543 U. S. 806, argued the cause for petitioner. With her on the briefs were *John M. Thompson* and *Jeffrey T. Green*.

*John P. Elwood* argued the cause for the United States. With him on the brief were *Acting Solicitor General Clement*, *Assistant Attorney General Wray*, and *Deputy Solicitor General Dreeben.**

JUSTICE SOUTER delivered the opinion of the Court, except as to Part III.

Title 18 U. S. C. § 924(e) (2000 ed. and Supp. II), popularly known as the Armed Career Criminal Act (ACCA), mandates a minimum 15-year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies. The Act makes burglary a vio-

---

*\*Gregory L. Poe, Roy T. Englert, Jr., Max Huffman,* and *Pamela Harris* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging reversal.

lent felony only if committed in a building or enclosed space ("generic burglary"), not in a boat or motor vehicle.  In *Taylor* v. *United States*, 495 U. S. 575 (1990), we held that a court sentencing under the ACCA could look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after trial was for generic burglary.  The question here is whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary.  We hold that it may not, and that a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.

## I

Petitioner Reginald Shepard was indicted under 18 U. S. C. § 922(g)(1), barring felons from possessing a firearm, and pleaded guilty.  At sentencing the Government claimed that Shepard's prior convictions raised his sentencing range from between 30 and 37 months (under the United States Sentencing Guidelines) to the 15-year minimum required by § 924(e), pointing to four prior convictions entered upon Shepard's pleas of guilty under one of Massachusetts's two burglary statutes.[1]  Whereas the Government said that each conviction represented a predicate ACCA offense of generic burglary, the District Court ruled that *Taylor* barred counting any of the prior convictions as predicates for the mandatory minimum.  125 F. Supp. 2d 562, 569 (Mass. 2000).

In *Taylor* we read the listing of "burglary" as a predicate "violent felony" (in the ACCA) to refer to what we called

---

[1] The Government initially cited a fifth prior burglary conviction, but after failing to obtain adequate documentation about this conviction the Government focused on the other four.

"generic burglary," an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U. S., at 599. Because statutes in some States (like Massachusetts) define burglary more broadly, as by extending it to entries into boats and cars, we had to consider how a later court sentencing under the ACCA might tell whether a prior burglary conviction was for the generic offense.[2] We held that the ACCA generally prohibits the later court from delving into particular facts disclosed by the record of conviction, thus leaving the court normally to "look only to the fact of conviction and the statutory definition of the prior offense." *Id.*, at 602. We recognized an exception to this "categorical approach" only for "a narrow range of cases where a jury [in a State with a broader definition of burglary] was actually required to find all the elements of" the generic offense. *Ibid.* We held the exception applicable "if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict . . . ." *Ibid.* Only then might a conviction under a "nongeneric" burglary statute qualify as an ACCA predicate.

In this case, the offenses charged in state complaints were broader than generic burglary, and there were of course no jury instructions that might have narrowed the charges to the generic limit. The Government nonetheless urged the District Court to examine reports submitted by the police with applications for issuance of the complaints, as a way of telling whether Shepard's guilty pleas went to generic burglaries notwithstanding the broader descriptions of the offenses in the complaints, descriptions that tracked the more expansive definition in Massachusetts law. The court concluded that *Taylor* forbade this, and that investigation within the *Taylor* limits failed to show that Shepard had

---

[2] Although *Taylor* involved prior burglaries, as this case does, our holding in *Taylor* covered other predicate ACCA offenses. 495 U. S., at 600.

three generic burglary convictions. The court accordingly refused to consider the 15-year mandatory minimum, though it did sentence Shepard somewhat above the standard level under the Sentencing Guidelines, on the ground that his criminal history category under the Guidelines did not do justice to his ample criminal record.

On appeal the First Circuit, following its earlier decision in *United States* v. *Harris,* 964 F. 2d 1234 (1992), vacated the sentence and ruled that complaint applications and police reports may count as "sufficiently reliable evidence for determining whether a defendant's plea of guilty constitutes an admission to a generically violent crime," 231 F. 3d 56, 67 (2000). As to each of Shepard's prior convictions, the court remanded the case for the District Court to determine whether there was "sufficiently reliable evidence that the government and the defendant shared the belief that the defendant was pleading guilty to a generically violent crime." *Id.,* at 70.

The District Court again declined to impose the 15-year mandatory minimum, even though the Government supplemented its earlier submission with police reports or complaint applications on two additional burglary convictions. The District Judge noted that the only account of what occurred at each of the prior plea hearings came from an affidavit submitted by Shepard, who stated "that none of the details in th[e police] reports w[as] ever mentioned at his pleas," that "the reports themselves were never read by the judge to him during the plea colloquy," and that at no time "was he ever asked if the information contained in the . . . [r]eports w[as] true." 181 F. Supp. 2d 14, 19 (Mass. 2002). Shepard further swore that "with respect to each report: [he] did not admit the truth of the information contained in the . . . [r]eport as part of [his] plea and [had] never admitted in court the facts alleged in the report . . . ." *Id.,* at 19–20 (internal quotation marks omitted). Based on this, the District Court found that the Government had failed to carry

its burden to demonstrate that Shepard had pleaded to three generic burglaries.

The Court of Appeals again vacated the sentence. After observing that Shepard had never "seriously disputed" that he did in fact break into the buildings described in the police reports or complaint applications, 348 F. 3d 308, 311 (CA1 2003), the court rejected the District Court's conclusion that the Government had not shown the requisite predicate offenses for the 15-year minimum sentence, *id.*, at 314. The case was remanded with instructions to impose that sentence.

We granted certiorari, 542 U. S. 918 (2004), to address divergent decisions in the Courts of Appeals applying *Taylor* when prior convictions stem from guilty pleas, not jury verdicts. We now reverse.

## II

We agree with the First Circuit (and every other Court of Appeals to speak on the matter) that guilty pleas may establish ACCA predicate offenses and that *Taylor*'s reasoning controls the identification of generic convictions following pleas, as well as convictions on verdicts, in States with non-generic offenses. See 348 F. 3d, at 312, n. 4 (citing cases). Shepard wisely refrains from challenging this position, for the ACCA nowhere provides that convictions in tried and pleaded cases are to be regarded differently. It drops no hint that Congress contemplated different standards for establishing the fact of prior convictions, turning on the basis of trial or plea. Nothing to that effect is suggested, after all, by the language imposing the categorical approach, which refers to predicate offenses in terms not of prior conduct but of prior "convictions" and the "element[s]" of crimes. *Taylor, supra,* at 600–601 (citing 18 U. S. C. § 924(e)). Nor does the ACCA's legislative history reveal a lesser congressional preference for a categorical, as distinct from fact-specific, approach to recognizing ACCA predicates in cases resolved by plea. *Taylor, supra,* at 601. And

certainly, "the practical difficulties and potential unfairness of a factual approach are daunting," *ibid.*, no less in pleaded than in litigated cases. Finally, nothing in *Taylor's* rationale limits it to prior jury convictions; our discussion of the practical difficulties inherent in looking into underlying circumstances spoke specifically of "cases where the defendant pleaded guilty, [in which] there often is no record of the underlying facts." *Ibid.* Our job, then, is to find the right analogs for applying the *Taylor* rule to pleaded cases.

The *Taylor* Court drew a pragmatic conclusion about the best way to identify generic convictions in jury cases, while respecting Congress's adoption of a categorical criterion that avoids subsequent evidentiary enquiries into the factual basis for the earlier conviction. The Court held that generic burglary could be identified only by referring to charging documents filed in the court of conviction, or to recorded judicial acts of that court limiting convictions to the generic category, as in giving instruction to the jury.

The Court did not, however, purport to limit adequate judicial record evidence strictly to charges and instructions, *id.*, at 602 (discussing the use of these documents as an "example"), since a conviction might follow trial to a judge alone or a plea of guilty. In cases tried without a jury, the closest analogs to jury instructions would be a bench-trial judge's formal rulings of law and findings of fact, and in pleaded cases they would be the statement of factual basis for the charge, Fed. Rule Crim. Proc. 11(a)(3), shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea.[3] With

---

[3] Several Courts of Appeals have taken a similar view, approving the use of some or all of these documents. *United States* v. *Bonat,* 106 F. 3d 1472, 1476–1477 (CA9 1997); *United States* v. *Maness,* 23 F. 3d 1006, 1009–1010 (CA6 1994); *United States* v. *Smith,* 10 F. 3d 724, 733–734 (CA10 1993) *(per curiam)* (construing United States Sentencing Commission, Guidelines Manual §4B1.2 (Nov. 1990)).

such material in a pleaded case, a later court could generally tell whether the plea had "necessarily" rested on the fact identifying the burglary as generic, *Taylor, supra,* at 602, just as the details of instructions could support that conclusion in the jury case, or the details of a generically limited charging document would do in any sort of case.

The Government argues for a wider evidentiary cast, however, going beyond conclusive records made or used in adjudicating guilt and looking to documents submitted to lower courts even prior to charges. It argues for considering a police report submitted to a local court as grounds for issuing a complaint under a nongeneric statute; if that report alleges facts that would satisfy the elements of a generic statute, the report should suffice to show that a later plea and conviction were for a predicate offense under the ACCA. There would be no reason for concern about unavailable witnesses or stale memories, the Government points out, and such limited enquiry would be consistent with *Taylor* because "[t]he underlying purpose [would be] the same as in examining the charging paper and jury instructions (which the Court endorsed in *Taylor*): to determine the nature of the offense of which petitioner was convicted, rather than to determine what he actually did." Brief for United States 22–23. The Government stresses three points.

First, it says that the more accommodating view of evidence competent to prove that the plea was to a generic offense will yield reliable conclusions. Although the records of Shepard's pleas with their notations that he "[a]dmit[ted] suff[icient] facts" do not necessarily show that he admitted entering buildings or structures, as would be true under a generic burglary statute or charge, the police reports suffice to show that the record of admitting sufficient facts "can only have plausibly rested on petitioner's entry of a building." *Id.,* at 25.

Second, the Government pulls a little closer to *Taylor*'s demand for certainty when identifying a generic offense by

emphasizing that the records of the prior convictions used in this case are in each instance free from any inconsistent, competing evidence on the pivotal issue of fact separating generic from nongeneric burglary. "[T]here is nothing in the record to indicate that petitioner had pleaded guilty based on entering a ship or vehicle on any of the occasions at issue." Brief for United States 16.

Finally, the Government supports its call for a more inclusive standard of competent evidence by invoking the virtue of a nationwide application of a federal statute unaffected by idiosyncrasies of recordkeeping in any particular State. A bar on review of documents like police reports and complaint applications would often make the ACCA sentencing enhancement "hinge on the happenstance of state court record-keeping practices and the vagaries of state prosecutors' charging practices." Brief in Opposition 13 (internal quotation marks omitted).

On each point, however, the Government's position raises an uncomfortable implication: every one of its arguments could have been pressed in favor of an enquiry beyond what *Taylor* allows when a jury conviction follows nongeneric instructions, and each is therefore as much a menace to *Taylor* as a justification for an expansive approach to showing whether a guilty plea admitted the generic crime. If the transcript of a jury trial showed testimony about a building break, one could say that the jury's verdict rested on a finding to that effect. If the trial record showed no evidence of felonious entrance to anything but a building or structure, the odds that the offense actually committed was generic burglary would be a turf accountant's dream. And, again, if it were significant that vagaries of abbreviated plea records could limit the application of the ACCA, the significance would be no less when the disputed, predicate conviction followed a jury trial and the stenographic notes of the charge had been thrown away.

The Government's position thus amounts to a call to ease away from the *Taylor* conclusion, that respect for congressional intent and avoidance of collateral trials require that evidence of generic conviction be confined to records of the convicting court approaching the certainty of the record of conviction in a generic crime State. But that limitation was the heart of the decision, and we cannot have *Taylor* and the Government's position both.

There is not, however, any sufficient justification for upsetting precedent here. We are, after all, dealing with an issue of statutory interpretation, see, *e. g.*, *Taylor*, 495 U. S., at 602, and the claim to adhere to case law is generally powerful once a decision has settled statutory meaning, see *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 172–173 (1989) ("Considerations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done"). In this instance, time has enhanced even the usual precedential force, nearly 15 years having passed since *Taylor* came down, without any action by Congress to modify the statute as subject to our understanding that it allowed only a restricted look beyond the record of conviction under a nongeneric statute.[4]

---

[4] Like the Government, the dissent would allow district courts to examine a wider range of documents than we approve today, and its proposal is no more consistent with *Taylor* than the Government's. *Taylor* is clear that any enquiry beyond statute and charging document must be narrowly restricted to implement the object of the statute and avoid evidentiary disputes. In the case before it, the Court drew the line after allowing courts to review documents showing "that the jury necessarily had to find an entry of a building to convict." 495 U. S., at 602; see also *ibid.* (permitting a sentencing court to look beyond the state statute "in a narrow range of cases where a jury was actually required to find all the elements of generic burglary"). As we say in the text, there are certainly jury trials with record documents like those at issue here, never introduced at trial

## III

Developments in the law since *Taylor*, and since the First Circuit's decision in *Harris*, provide a further reason to adhere to the demanding requirement that any sentence under the ACCA rest on a showing that a prior conviction "necessarily" involved (and a prior plea necessarily admitted) facts equating to generic burglary. The *Taylor* Court, indeed, was prescient in its discussion of problems that would follow from allowing a broader evidentiary enquiry. "If the sentencing court were to conclude, from its own review of the record, that the defendant [who was convicted under a nongeneric burglary statute] actually committed a generic burglary, could the defendant challenge this conclusion as abridging his right to a jury trial?" 495 U. S., at 601. The Court thus anticipated the very rule later imposed for the sake of preserving the Sixth Amendment right, that any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant. *Jones* v. *United States*, 526 U. S. 227, 243, n. 6 (1999); see also *Apprendi* v. *New Jersey*, 530 U. S. 466, 490 (2000).

The Government dismisses the relevance of the *Jones-Apprendi* implementation of the jury right here by describ-

---

but "uncontradicted," *post*, at 31 (opinion of O'CONNOR, J.), and "internally consistent," *ibid.*, with the evidence that came in. The dissent would presumably permit examination of such documents, but *Taylor* assuredly does not.

The only way to reconcile the dissent's approach with *Taylor* is to say that in *Taylor* the prior convictions followed jury verdicts while in this case each prior conviction grew out of a guilty plea. See *post*, at 36 ("*Taylor* itself set no rule for guilty pleas"). But *Taylor* has no suggestion that its reasoning would not apply in plea cases, and its discussion of the practical difficulties specifically referred to prior guilty pleas. 495 U. S., at 601. Moreover, as we have noted, see *supra*, at 19, and as the dissent nowhere disputes, the ACCA provides no support for such a distinction. We decline to create a distinction that Congress evidently had no desire to draw, that *Taylor* did not envision, and that we would be hard pressed to explain.

ing the determination necessary to apply the ACCA as "involv[ing] only an assessment of what the state court itself already has been 'required to find' in order to find the defendant guilty." Brief for United States 38 (quoting *Taylor, supra*, at 602). But it is not that simple. The problem is that "what the state court ... has been 'required to find'" is debatable. In a nongeneric State, the fact necessary to show a generic crime is not established by the record of conviction as it would be in a generic State when a judicial finding of a disputed prior conviction is made on the authority of *Almendarez-Torres* v. *United States*, 523 U. S. 224 (1998). The state statute requires no finding of generic burglary, and without a charging document that narrows the charge to generic limits, the only certainty of a generic finding lies in jury instructions, or bench-trial findings and rulings, or (in a pleaded case) in the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea. In this particular pleaded case, the record is silent on the generic element, there being no plea agreement or recorded colloquy in which Shepard admitted the generic fact.

Instead, the sentencing judge considering the ACCA enhancement would (on the Government's view) make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea, and the dispute raises the concern underlying *Jones* and *Apprendi*: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence. While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* and *Apprendi*, to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute. The rule of reading statutes to avoid serious risks of unconstitutionality, see *Jones, supra*, at 239, therefore

counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea, just as *Taylor* constrained judicial findings about the generic implication of a jury's verdict.[5]

## IV

We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings.

*It is so ordered.*

THE CHIEF JUSTICE took no part in the decision of this case.

JUSTICE THOMAS, concurring in part and concurring in the judgment.

*Apprendi* v. *New Jersey,* 530 U. S. 466 (2000), and its progeny prohibit judges from "mak[ing] a finding that raises [a defendant's] sentence beyond the sentence that could have

---

[5] The dissent charges that our decision may portend the extension of *Apprendi* v. *New Jersey,* 530 U. S. 466 (2000), to proof of prior convictions, a move which (if it should occur) "surely will do no favors for future defendants in Shepard's shoes." *Post,* at 38. According to the dissent, the Government, bearing the burden of proving the defendant's prior burglaries to the jury, would then have the right to introduce evidence of those burglaries at trial, and so threaten severe prejudice to the defendant. It is up to the future to show whether the dissent is good prophesy, but the dissent's apprehensiveness can be resolved right now, for if the dissent turns out to be right that *Apprendi* will reach further, any defendant who feels that the risk of prejudice is too high can waive the right to have a jury decide questions about his prior convictions.

lawfully been imposed by reference to facts found by the jury or admitted by the defendant." *United States* v. *Booker*, 543 U. S. 220, 317–318 (2005) (THOMAS, J., dissenting in part). Yet that is what the Armed Career Criminal Act, 18 U. S. C. § 924(e) (2000 ed. and Supp. II), permits in this case. Petitioner Reginald Shepard pleaded guilty to being a felon in possession of a firearm, in violation of 18 U. S. C. § 922(g)(1), which exposed him to a maximum sentence of 10 years under § 924(a)(2) and a Federal Sentencing Guidelines range of 30-to-37 months. However, § 924(e)(1) (2000 ed., Supp. II) mandated a minimum 15-year sentence if Shepard had three previous convictions for "a violent felony or a serious drug offense." Shepard has never conceded that his prior state-court convictions qualify as violent felonies or serious drug offenses under § 924(e). Even so, the Court of Appeals resolved this contested factual matter by ordering the District Court to impose the enhancement on remand.

The constitutional infirmity of § 924(e)(1) as applied to Shepard makes today's decision an unnecessary exercise. Nevertheless, the plurality today refines the rule of *Taylor* v. *United States*, 495 U. S. 575 (1990), and further instructs district courts on the evidence they may consider in determining whether prior state convictions are § 924(e) predicate offenses. *Taylor* and today's decision thus explain to lower courts how to conduct factfinding that is, according to the logic of this Court's intervening precedents, unconstitutional in this very case. The need for further refinement of *Taylor* endures because this Court has not yet reconsidered *Almendarez-Torres* v. *United States*, 523 U. S. 224 (1998), which draws an exception to the *Apprendi* line of cases for judicial factfinding that concerns a defendant's prior convictions. See *Apprendi, supra,* at 487–490.

*Almendarez-Torres,* like *Taylor,* has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided. See 523 U. S., at 248–249

28

(SCALIA, J., joined by STEVENS, SOUTER, and GINSBURG, JJ., dissenting); *Apprendi, supra,* at 520–521 (THOMAS, J., concurring). The parties do not request it here, but in an appropriate case, this Court should consider *Almendarez-Torres'* continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of *Almendarez-Torres,* despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements." *Harris* v. *United States,* 536 U. S. 545, 581–582 (2002) (THOMAS, J., dissenting).

In my view, broadening the evidence judges may consider when finding facts under *Taylor*—by permitting sentencing courts to look beyond charging papers, jury instructions, and plea agreements to an assortment of other documents such as complaint applications and police reports—would not give rise to constitutional doubt, as the plurality believes. See *ante,* at 24–26. It would give rise to constitutional error, no less than does the limited factfinding that *Taylor*'s rule permits. For this reason, as well as those set forth in Parts I, II, and IV of the Court's opinion, the Court correctly declines to broaden the scope of the evidence judges may consider under *Taylor.* But because the factfinding procedure the Court rejects gives rise to constitutional error, not doubt, I cannot join Part III of the opinion.

JUSTICE O'CONNOR, with whom JUSTICE KENNEDY and JUSTICE BREYER join, dissenting.

The Court today adopts a rule that is not compelled by statute or by this Court's precedent, that makes little sense as a practical matter, and that will substantially frustrate Congress' scheme for punishing repeat violent offenders who violate federal gun laws. The Court is willing to acknowledge that petitioner's prior state burglary convictions occurred, and that they involved unpermitted entries with

intent to commit felonies. But the Court refuses to accept one additional, commonsense inference, based on substantial documentation and without any evidence to the contrary: that petitioner was punished for his entries into *buildings*.

Petitioner, Reginald Shepard, has never actually denied that the prior crimes at issue were burglaries of buildings. Nor has he denied that, in pleading guilty to those crimes, he understood himself to be accepting punishment for burglarizing buildings. Instead, seeking to benefit from the unavailability of certain old court records and from a minor ambiguity in the prior crimes' charging documents, petitioner asks us to foreclose any resort to the clear and uncontradicted background documents that gave rise to and supported his earlier convictions.

The Court acquiesces in that wish and instructs the federal courts to ignore all but the narrowest evidence regarding an Armed Career Criminal Act defendant's prior guilty pleas. I respectfully dissent.

I

The Armed Career Criminal Act (ACCA) mandates a 15-year minimum sentence for certain federal firearms violations where the defendant has three prior convictions for a "violent felony." 18 U. S. C. § 924(e). In defining violent felonies for this purpose, Congress has specified that the term includes any crime, punishable by more than one year's imprisonment, that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B)(ii). We held in *Taylor* v. *United States*, 495 U. S. 575 (1990), that the statute's use of the term "burglary" was meant to encompass only what we described as "generic" burglary, a crime with three elements: (1) "unlawful or unprivileged entry into, or remaining in," (2) "a building or structure," (3) "with intent to commit a crime." *Id.*, at 598–599.

That left the problem of how to determine whether a defendant's past conviction qualified as a conviction for generic burglary. The most formalistic approach would have been to find the ACCA requirement satisfied only when the *statute* under which the defendant was convicted was one limited to "generic" burglary. But *Taylor* wisely declined to follow that course. The statutes which some States—like Massachusetts here, or Missouri in *Taylor*—use to prosecute generic burglary are overbroad for ACCA purposes: They are not limited to "generic" burglary, but also punish the nongeneric kind. Restricting the sentencing court's inquiry to the face of the statute would have frustrated the purposes of the ACCA by allowing some violent recidivists convicted of federal gun crimes to escape the ACCA's heightened punishment based solely on the fortuity of where they had committed their previous crimes.

Instead, *Taylor* adopted a more "pragmatic" approach. *Ante,* at 20 (majority opinion). Every statute punishes a certain set of criminalized actions; the problem with some burglary statutes, for purposes of the ACCA, is that they are overinclusive. But *Taylor* permitted a federal court to "go beyond the mere fact of conviction"—and to determine, by using other sources, whether the defendant's prior crime was in the *subset* of the statutory crime qualifying as generic burglary. For example, where a defendant's prior conviction occurred by jury trial, *Taylor* instructed the federal court to review "the indictment or information and jury instructions" from the earlier conviction, to see whether they had "required the jury to find all the elements of generic burglary in order to convict." 495 U. S., at 602.

As the Court recognizes, however, *Taylor*'s use of that one example did not purport to be exhaustive. See *ante,* at 20–21. See also *United States* v. *Harris,* 964 F. 2d 1234, 1236 (CA1 1992) (Breyer, C. J.). Rather, *Taylor* left room for courts to determine which other reliable and simple sources might aid in determining whether a defendant had in fact

been convicted of generic burglary. The Court identifies several such sources that a sentencing judge may consult under the ACCA: the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Ante*, at 16. I would expand that list to include *any* uncontradicted, internally consistent parts of the record from the earlier conviction. That would include the two sources the First Circuit relied upon in this case.

Shepard's four prior convictions all occurred by guilty pleas to charges under Massachusetts' two burglary statutes—statutes that punish "[w]hoever . . . breaks and enters a *building, ship, vessel or vehicle,* with intent to commit a felony." Mass. Gen. Laws Ann., ch. 266, § 16 (West 2000) (emphasis added); see also § 18. The criminal complaints used as charging documents for the convictions at issue did not specify that Shepard's offenses had involved a building, but instead closely copied the more inclusive language of the appropriate statute. If these complaints were the only evidence of the factual basis of Shepard's guilty pleas, then I would agree with the majority that there was no way to know whether those convictions were for burglarizing a building. But the Government did have additional evidence. For each of the convictions, the Government had both the applications by which the police had secured the criminal complaints and the police reports attached to those applications. Those documents decisively show that Shepard's illegal act in each prior conviction was the act of entering a building. Moreover, they make inescapable the conclusion that, at each guilty plea, Shepard *understood* himself to be admitting the crime of breaking into a building.

Consider, for instance, the first burglary conviction at issue. The complaint for that conviction alleged that, on May 6, 1989, Shepard "did break and enter in the night time the building, ship, vessel or vehicle, the property of Jerri Cothran, with intent to commit a felony therein" in violation

of § 16. 3 App. 5. The place of the offense was alleged as "30 Harlem St.," and the complaint contained a cross-reference to "CC#91–394783."

The majority would have us stop there. Since both the statute and the charging document name burglary of a "building, ship, vessel or vehicle," the majority concludes that there is no way to tell whether Massachusetts punished Shepard for transgressing its laws by burglarizing a building, or for doing so by burglarizing a vehicle, ship, or vessel. (Although the majority would also allow a look at Shepard's written plea agreement or a transcript of the plea proceedings, those items are no longer available in Shepard's case, since Massachusetts has apparently seen little need to preserve the miscellany of long-past convictions.)

I would look as well to additional portions of the record from that plea—the complaint application and police report. The complaint application lists the same statute, describes (in abbreviated form) the same offense, names the same victim and address, and contains the same reference number (though differently hyphenated) as the complaint itself. In addition, the application specifies as relevant "PROPERTY" (meaning "Goods stolen, what destroyed, etc.") a "Cellar Door." *Id.,* at 6. The police report (which also names the same victim, date, and place of offense, and contains the same reference number as the other two documents) gives substantially more detail about why Massachusetts began criminal proceedings against Shepard:

> "[R]esponded to [radio call] to 30 Harlem St. for B-E in progress. On arrival observed cellar door in rear had been broken down. Spoke to victim who stated that approx 3:00 a.m. she heard noises downstairs. She then observed suspect . . . in her pantry." *Id.,* at 7.

Three points need to be made about the relationship between the complaint (whose use the majority finds completely unobjectionable) and the application and police report

(which I would also consider). First, all of the documents concern the same crime. Second, the three documents are entirely consistent—nothing in any of them casts doubt on the veracity of the others. Finally, and most importantly, the common understanding behind all three documents was that, whatever the range of conduct punishable by the state statute, *this* defendant was being prosecuted for burglary *of a building.* See 348 F. 3d 308, 314 (CA1 2003) ("[T]here is a compelling inference that the plea was to the complaint and that the complaint embodied the events described in the application or police report in the case file").

There certainly is no evidence in the record contradicting that understanding. Notably, throughout these proceedings, Shepard has never denied that the four guilty pleas at issue involved breaking into buildings. Nor has he denied that his contemporaneous understanding of each plea was that, as a result of his admission, he would be punished for having broken into a building. During his federal sentencing hearings, Shepard did submit an affidavit about his prior convictions. But that affidavit carefully dances around the key issues of *what Shepard actually did* to run afoul of the law and *what he thought was the substance of his guilty plea.* Rather, the affidavit focuses on what the judge said to Shepard at the hearing and what Shepard said in response. Even in that regard, the affidavit is strangely ambiguous. In discussing the first conviction, for instance, the affidavit states that "the judge [who took the plea] did not read" the police report to Shepard, "and did not ask me whether or not the information contained in the . . . report was true." 1 App. 100. See also *ibid.* ("I did not admit the truth of the information contained in the . . . report as part of my plea and I have never admitted in court that the facts alleged in the reports are true"). The affidavit's statements about the other three prior convictions are similar.

Those statements could be taken as Shepard's denial that he was ever asked about (or ever admitted to) any of the

specific facts of his crime that happen to be mentioned in the police reports—facts like the date and place of the offense, whether he entered through a cellar door and proceeded to the pantry, and so on. But to believe that, we would have to presume that all four Massachusetts courts violated their duty under state law to assure themselves of the factual basis for Shepard's plea. In Massachusetts, "[a] defendant's choice to plead guilty will not alone support conviction; the defendant's guilt in fact must be established." *Commonwealth* v. *DelVerde*, 398 Mass. 288, 296, 496 N. E. 2d 1357, 1362 (1986). As a result, even if "the defendant admits to the crime in open court, . . . a court may not convict unless there are sufficient facts on the record to establish each element of the offense." *Id.*, at 297, 496 N. E. 2d, at 1363. See also *Commonwealth* v. *Colon*, 439 Mass. 519, 529, n. 13, 789 N. E. 2d 566, 573, n. 13 (2003) (guilty plea requires admission to the facts); 2 E. Blumenson, S. Fisher, & D. Kanstroom, Massachusetts Criminal Practice § 37.7B, p. 288 (1998) ("Usually this is accomplished by the recitation of either the grand jury minutes or police reports, but defendant's admissions during the plea, or trial evidence, can also support the factual basis" (footnote omitted)). Cf. *Commonwealth* v. *Forde*, 392 Mass. 453, 458, 466 N. E. 2d 510, 513 (1984) (conviction cannot be based on uncorroborated confession; rather, there must be some evidence that the crime was "real and not imaginary"). It is thus unlikely that Shepard really intended his affidavit as a statement that none of the various facts found in the police reports were ever admitted by him or discussed in his presence during his guilty pleas.

More likely, Shepard's attorney carefully phrased the affidavit so that it would admit of a different meaning: that the plea courts never asked, and Shepard never answered, the precise question: "Is what the police report says true?" But I fail to see how *that* is relevant, so long as Shepard understood that, in pleading guilty, he was agreeing to be punished

for the building break-in that was the subject of the entire proceeding.

There may be some scenarios in which—as the result of charge bargaining, for instance, or due to unexpected twists in an investigation—a defendant's guilty plea is premised on substantially different facts than those that were the basis for the original police investigation. In such a case, a defendant might well be confused about the practical meaning of his admission of guilt. Cf. *Taylor*, 495 U. S., at 601–602 ("[I]f a guilty plea to a lesser, nonburglary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary"). But there is no claim of such circumstances here: All signs are that everyone involved in each prior plea—from the judge, to the prosecutor, to the defense lawyer, to Shepard himself—understood each plea as Shepard's admission that he had broken into the building where the police caught him. Given each police report's never-superseded allegation that Shepard had burglarized a building, it strains credulity beyond the breaking point to assert that, in each case, Shepard was actually prosecuted for and pleaded guilty to burglarizing a ship or a car. The lower court was surely right to detect "an air of make-believe" about Shepard's case. 348 F. 3d, at 311.

The majority's rule, which forces the federal sentencing court to feign agnosticism about clearly knowable facts, cannot be squared with the ACCA's twin goals of incapacitating repeat violent offenders, and of doing so *consistently* notwithstanding the peculiarities of state law. Cf. *Taylor*, *supra*, at 582 ("'[I]n terms of fundamental fairness, the Act should ensure, to the extent that it is consistent with the prerogatives of the States in defining their own offenses, that the same type of conduct is punishable on the Federal level in all cases'" (quoting S. Rep. No. 98–190, p. 20 (1983))). The Court's overscrupulous regard for formality leads it not only

to an absurd result, but also to a result that Congress plainly hoped to avoid.

## II

The Court gives two principal reasons for today's ruling: adherence to the Court's decision in *Taylor*, and constitutional concerns about the defendant's right to a jury trial.

The first is hardly convincing. As noted above, *Taylor* itself set no rule for guilty pleas, and its list of sources for a sentencing court to consider was not intended to be exhaustive. *Supra*, at 30–31. The First Circuit's disposition of this case, therefore, was not in direct conflict with *Taylor*. Nor did it conflict with the spirit of *Taylor*. *Taylor* was in part about "[f]air[ness]" to defendants. 495 U. S., at 602. But there is nothing unfair (and a great deal that is positively just) about recognizing and acting upon plain and uncontradicted evidence that a defendant, in entering his prior plea, knew he was being prosecuted for and was pleading guilty to burglary of a building. *Taylor* also sought to avoid the impracticality of mini-sentencing-trials featuring opposing witnesses perusing lengthy transcripts of prior proceedings. *Id.*, at 601. But no such problem presents itself in this case: The Government proposed using only the small documentary record behind Shepard's pleas. Those documents relate to facts that Shepard does not dispute, and Shepard has not indicated any desire to submit counterevidence.

The issue most central to *Taylor* was the need to effectuate Congress' "categorical approach" to sentencing recidivist federal offenders—an approach which responds to the reality of a defendant's prior crimes, rather than the happenstance of how those crimes "were labeled by state law." *Id.*, at 589. But rather than promote this goal, the majority opinion today injects a new element of arbitrariness into the ACCA: A defendant's sentence will now depend not only on the peculiarities of the statutes particular States use to prosecute generic burglary, but also on whether those States' record retention policies happen to preserve the musty "written

plea agreement[s]" and recordings of "plea colloqu[ies]" ancillary to long-past convictions. *Ante*, at 16. In other words, with respect to this most critical issue, the majority's rule is not consistent with *Taylor* at all.

That is why I strongly suspect that the driving force behind today's decision is not *Taylor* itself, but rather "[d]evelopments in the law since *Taylor*." *Ante*, at 24 (plurality opinion). A majority of the Court defends its rule as necessary to avoid a result that might otherwise be unconstitutional under *Apprendi* v. *New Jersey*, 530 U. S. 466 (2000), and related cases. *Ante*, at 24–26 (plurality opinion); *ante*, at 27–28 (THOMAS, J., concurring in part and concurring in judgment). I have criticized that line of cases from the beginning, and I need not repeat my reasoning here. See *Apprendi, supra*, at 523 (dissenting opinion); *Ring* v. *Arizona*, 536 U. S. 584, 619 (2002) (dissenting opinion); *Blakely* v. *Washington*, 542 U. S. 296, 344–345 (2004) (dissenting opinion). See also *Jones* v. *United States*, 526 U. S. 227, 254 (1999) (KENNEDY, J., dissenting); *Blakely, supra*, at 340–344 (BREYER, J., dissenting); *United States* v. *Booker*, 543 U. S. 220, 327–331 (2005) (BREYER, J., dissenting). It is a battle I have lost.

But it is one thing for the majority to apply its *Apprendi* rule within that rule's own bounds, and quite another to extend the rule into new territory that *Apprendi* and succeeding cases had expressly and consistently disclaimed. Yet today's decision reads *Apprendi* to cast a shadow possibly implicating recidivism determinations, which until now had been safe from such formalism. See *Blakely, supra*, at 301 ("'*Other than the fact of a prior conviction,* any fact that increases the penalty of a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt'" (quoting *Apprendi, supra*, at 490; emphasis added)). See also *Booker, supra*, at 244 (opinion of the Court by STEVENS, J.) (similar).

Even in a post-*Apprendi* world, I cannot understand how today's case raises any reasonable constitutional concern.

To the contrary, this case presents especially good reasons for respecting Congress' long "tradition of treating recidivism as a sentencing factor" determined by the judge, *Almendarez-Torres* v. *United States,* 523 U. S. 224, 243 (1998), rather than as a substantive offense element determined by the jury. First, Shepard's prior convictions were themselves "established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." *Jones, supra,* at 249. Second, as with most recidivism determinations, see *Almendarez-Torres, supra,* at 235, the burglary determination in Shepard's case concerned an extremely narrow issue, with the relevant facts not seriously contested. See *supra,* at 33–35 (discussing shortcomings of Shepard's affidavit). Finally, today's hint at extending the *Apprendi* rule to the issue of ACCA prior crimes surely will do no favors for future defendants in Shepard's shoes. When ACCA defendants in the future go to trial rather than plead guilty, the majority's ruling in effect invites the Government, in prosecuting the federal gun charge, also "to prove to the jury" the defendant's prior burglaries. *Almendarez-Torres,* 523 U. S., at 234–235. "[T]he introduction of evidence of a defendant's prior crimes risks significant prejudice," *id.,* at 235, and that prejudice is likely to be especially strong in ACCA cases, where the relevant prior crimes are, by definition, "violent," 18 U. S. C. § 924(e). In short, whatever the merits of the *Apprendi* doctrine, that doctrine does not currently bear on, and should not be extended to bear on, determinations of a defendant's past crimes, like the ACCA predicates at issue in Shepard's case. The plurality's concern about constitutional doubt, *ante,* at 24–26, and JUSTICE THOMAS' concern about constitutional error, *ante,* at 27–28, are therefore misplaced.

\*　　\*　　\*

For the reasons explained above, I would find that the First Circuit properly established the applicability of the

ACCA sentence by looking to the complaint applications and police reports from the prior convictions. Because the Court concludes otherwise, I respectfully dissent.