**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-4433**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JEROME HENDERSON,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore.  Marvin J. Garbis, Senior District Judge. (1:03-cr-00109-MJG)

Submitted:  August 8, 2007          Decided:  August 24, 2007

Before KING and DUNCAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

James Wyda, Federal Public Defender, Sarah S. Gannett, Staff Attorney, Joanna Silver, Assistant Federal Public Defender, Baltimore, Maryland, for Appellant.  Rod J. Rosenstein, United States Attorney, Michael J. Leotta, Harry M. Gruber, Assistant United States Attorneys, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jerome Henderson was convicted by a jury of one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (2000). The district court determined the statutory conditions set forth in the Armed Career Criminal Act ("ACCA") were satisfied, and sentenced Henderson to 184 months' imprisonment. Finding no error, we affirm.

On appeal, Henderson initially contends that the Government's closing argument, as it pertained to an alleged attempted armed robbery, was improper. We review a claim of prosecutorial misconduct "to determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002) (internal quotation marks omitted). "The test for reversible prosecutorial misconduct has two components; first, the defendant must show that the prosecutor's remarks or conduct were improper and, second, the defendant must show that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial." Id. Relevant factors in the determination of prejudice include:

> (1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the defendant; (4) whether the comments were deliberately placed before the jury to divert

- 2 -

attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury.

Id. at 185-86.

Testimony regarding an alleged attempted armed robbery was introduced at trial to establish why law enforcement officers initially approached Henderson. In accordance with the parties' agreement, a limiting instruction addressing this testimony was given by the court after the testimony was first presented and once again during the court's final jury instructions. The agreed to instruction stated:

> You have heard evidence that the police approached Mr. Henderson in connection with their investigation of an attempted armed robbery. That information has been presented to explain why the police approached Mr. Henderson. You are not to consider it for any other purpose. That is, you are not to consider whether there in fact was an attempted robbery, whether a gun was used, or whether Mr. Henderson was involved, in deciding whether the government has sustained its burden of proof in this case.

As evidence of the § 922(g)(1) violation, the Government presented the testimony of law enforcement officers who responded to the alleged attempted armed robbery. When Henderson was approached by officers, he fled. Officer John Gorman of the Baltimore City Police Department stated that he saw Henderson clutching the right side of his jacket as he ran away. Soon thereafter, Officer Gorman witnessed Henderson withdraw a firearm

from his jacket.  Officer Gorman consequently tackled Henderson. In the process, Henderson dropped the firearm and it "flew forward."  Officer Gorman instructed the other officers on the scene as to the firearm's location, and it was quickly recovered. Though the firearm was in poor condition, it was determined to be operable.  Henderson stipulated that the firearm had traveled in interstate commerce and that he was a convicted felon.

During its closing argument, the Government stated:

> We're here today because on November 3rd, 2002, this man, the defendant, Jerome Henderson, was caught red-handed with a gun on Eutaw Place in Baltimore, Maryland.  Caught red-handed with this gun.  The police had stopped Mr. Henderson because they had received a tip that he matched the exact description of a person who tried to rob this victim with a gun.

The Government additionally argued:

> And let me also talk about the condition of this gun because there's been a lot of talk about the gun.  You know, it's a rusty old gun.  It's covered in rust.  It's corroded.  I don't know how long it must take to get this rusty.  Probably months.  But that doesn't have anything to do with whether the defendant possessed it on the night in question.  You can rob somebody with a rusty gun.

Throughout the opening statements, trial, and closing arguments, both the Government and the defense addressed the issue of the alleged attempted armed robbery.  The remarks challenged by the defense are not inconsistent with the manner in which the issue was addressed during the course of the trial.  Moreover, the

remarks at issue comprise only a fraction of the Government's lengthy closing and rebuttal arguments. Even if the remarks could be said to have prejudiced Henderson by misleading the jury or diverting its attention, such prejudice was minimal when compared to the compelling evidence introduced to establish Henderson's guilt. Furthermore, any prejudice suffered by Henderson was cured by the district court's limiting instruction given several times during the course of the trial. See United States v. Francisco, 35 F.3d 116, 119-20 (4th Cir. 1994) (per curiam) (stating this court generally follows the presumption that the jury obeyed the district court's instructions). Thus, we conclude Henderson has failed to establish that the Government's remarks constitute reversible error.

Henderson also contends that the district court erred in its application of the ACCA. He argues that it was improper for the district court to rely on United States v. Wardrick, 350 F.3d 446, 455-56 (4th Cir. 2003), in finding his resisting arrest conviction categorically qualifies as a violent felony under the residual provision of clause (ii)[1], as such an approach requires impermissible judicial fact-finding in violation of Shepard v. United States, 544 U.S. 13 (2005).

---

[1]The term "violent felony" is defined by the residual provision of clause (ii) to include crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) ("clause (ii)").

However, the Supreme Court has determined that the use of such a "categorical approach" does not run afoul of <u>Shepard</u> as it "look[s] only to the fact of conviction and the statutory definition of the prior offense, and [does] not generally consider the particular facts disclosed by the record of conviction." <u>James v. United States</u>, 127 S. Ct. 1586, 1594 (2007) (internal quotation marks omitted). Thus, the approach taken by this court in <u>Wardrick</u> survives post-<u>Shepard</u> scrutiny. The district court's application of the ACCA was therefore proper.[2]

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

<u>AFFIRMED</u>

---

[2]As Henderson has the requisite number of convictions for enhancement under the ACCA, we need not address the Government's alternative argument that Henderson's subsequently vacated convictions likewise support enhancement. Therefore, we deny as moot Henderson's motion to strike those portions of the Government's brief addressing this argument.