UNITED STATES of America,
Plaintiff—Appellee,

v.

Hilario LOPEZ–SALAS, aka Chapo
LNU, Defendant—Appellant.

United States of America,
Plaintiff—Appellee,

v.

Jose Luis Carrillo–Mendez, aka Luis
and Johnny, Defendant—
Appellant.

United States of America,
Plaintiff—Appellee,

v.

Billy Joe Thompson, Defendant—
Appellant.

Nos. 06–30350, 06–30631, 06–30637.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 16, 2007.

Filed Nov. 15, 2007.

**622**

Russell E. Smoot, Esq., Office of the U.S. Attorney, Spokane, WA, for Plaintiff–Appellee.

Dawn Marie Reynolds, Esq., Dallas, OR, for Hilario Lopez–Salas, aka Chapo LNU.

Terence M. Ryan, Esq., Nino & Ryan Law Office, Spokane, WA, for Jose Luis Carrillo–Mendez, aka Luis and Johnny.

Tracy A. Staab, Esq., Federal Public Defender's Office, Spokane, WA, for Billy Joe Thompson.

Before: B. FLETCHER, BEAM *, and RYMER, Circuit Judges.

MEMORANDUM **

## I. OVERVIEW

Appellants Hilario Lopez–Salas, Jose Luis Carrillo–Mendez, and Billy J. Thompson participated in a Mexico based drug trafficking organization operating in eastern Washington. Following a lengthy Drug Enforcement Administration (DEA) investigation that led to their arrests, each pleaded guilty to conspiracy to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine and five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine. All three men challenge their sentences on appeal, and each is discussed separately below.

## II. SENTENCING REVIEW POST–BOOKER

This court reviews a district court's interpretation of the Sentencing Guidelines *de novo*, its application of the Guidelines to the facts of the case for an abuse of discretion, and the district court's factual findings for clear error. *United States v. Garner*, 490 F.3d 739, 742 (9th Cir.2007). "This court reviews the ultimate post-*Booker* sentence imposed for 'reasonableness.'" *Id.* (quoting *United States v. Reina–Rodriguez*, 468 F.3d 1147, 1158 (9th Cir.2006)). In making the reasonableness determination, "we are guided by the sentencing factors set forth in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, and the range established by the Guidelines." *Id.* at 743.

To comply with the requirements of *Booker*, the district court must have sufficiently considered section 3553(a)'s factors, but the district court is not required to do so in a checklist fashion. *United States v. Sylvester Norman Knows His Gun, III*, 438 F.3d 913, 918 (9th Cir.), *cert. denied*, 547 U.S. 1214, 126 S.Ct. 2913, 165 L.Ed.2d 931 (2006). A showing that the district court considered the statutorily designated factors in imposing a sentence is sufficient. *Id.*

---

* The Honorable C. Arlen Beam, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

## A. Hilario Lopez–Salas

■ The district court sentenced Lopez–Salas to 168 months' imprisonment. This was the low end of the Guidelines range for Lopez–Salas. Lopez–Salas challenges this sentence as unreasonable. He claims that as a runner in the organization, there was no basis for the two-level enhancement sought by the government, and especially notes a disparity in sentencing, in that he received a sentence thirty-three months higher than Carlos Santos, an individual known to be one of the leaders of the organization.[1]

At sentencing, the district court carefully conducted a section 3553(a) analysis and sentenced Lopez–Salas at the bottom of the Guidelines range. Lopez–Salas's Presentence Investigation Report calculated a sentence range of 135–168 months, which included an acceptance of responsibility adjustment pursuant to U.S. Sentencing Guidelines Manual § 3E1.1, and anticipated the inclusion of the "safety-valve" adjustment. Lopez–Salas, however, elected not to proffer and therefore the safety-valve adjustment did not apply. Accordingly, his total offense level was 35 with a criminal history category of I, resulting in a range of 168–210 months. Contrary to Lopez–Salas's argument, the government did not seek a two-level enhancement.

The district court did not abuse its discretion in sentencing Lopez–Salas at the bottom of his Guidelines range, and the ultimate sentence was reasonable based on this record.

## B. Jose Luis Carrillo–Mendez

■ The district court sentenced Carrillo–Mendez to 186 months. In doing so, the district court held that Carrillo–Mendez was a leader or organizer of this large drug-trafficking operation and adjusted Carrillo–Mendez's sentence upward two levels under section 3B1.1(c). Carrillo–Mendez challenges this designation on appeal. We review a district court's determination that a defendant was an "organizer or leader" for purposes of a sentencing enhancement for clear error and find none. *United States v. Montano,* 250 F.3d 709, 712 (9th Cir.2001).

At his final sentencing hearing, Carrillo–Mendez represented to the district court that all he did was talk on the telephone and make narcotics sales. He claimed that after these calls, he would then call others to make deliveries, "but nobody had the authority over the rest."

To distinguish a leadership or organizational role from one of mere management, a court should consider the following: (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S. Sentencing Guidelines Manual § 3B1.1 cmt. n. 4 (2006). Here, Carrillo–Mendez fills the bill as a leader or organizer.

Carrillo–Mendez recognizes that there were facts demonstrating that he had an important role in the conspiracy, but argues that there was no evidence that he exercised some level of control over others involved in the conspiracy. A district court's application of the section 3B1.1(c)

---

1. Lopez–Salas's argument about the disparity between his sentence and that of co-defendant Santos is futile. While true that Santos received a sentence thirty-three months less than Lopez–Salas, that is at least in part accounted for by the fact that Santos took advantage of safety-valve relief.

two-level adjustment is not clearly erroneous where a defendant tells others when to take certain actions, what to deliver, and where to deliver it. *Montano,* 250 F.3d at 715–16. " 'An enhancement may be proper where . . . a defendant organizes others in the commission of the criminal activity even though he does not retain a supervisory role over the other participants. The enhancement [under section 3B1.1(c) ] reflects the greater level of culpability of the participant who arranges the transaction.' " *Id.* at 716 (quoting *United States v. Varela,* 993 F.2d 686, 691–92 (9th Cir. 1993)).

The evidence mounted against Carrillo–Mendez belies any assertion that the two-level adjustment was not warranted in this case, especially given our clear-error review. Carrillo–Mendez was the primary contact for the local low-level distributors and the various co-defendants, he dispatched runners, made decisions regarding pricing, negotiated the distributed amounts, made decisions regarding where and when the runners would deliver the drugs, and was the person contacted when a woman came to collect the receipts of the operation. Accordingly, we affirm the district court's sentence.

## C.  Billy J. Thompson

■ Thompson received a 140–month sentence. Thompson challenges whether his prior Washington State conviction for riot, in violation of Washington Revised Code § 9A.84.010, qualifies as a "crime of violence" for purposes of the career-offender enhancement under U.S.S.G. § 4B1.1. It does. The amended information, plea to the charges, and judgment of conviction show that Thompson was convicted of a crime of violence against a person, not property, under the modified categorical approach.

This court reviews *de novo* the determination of a defendant's career offender status. *United States v. Snellenberger,* 493 F.3d 1015, 1018 (9th Cir.2007). A court may determine that a defendant is a career offender, eligible for a sentence enhancement under the Guidelines, if the defendant has "at least two prior felony convictions of either a crime of violence or a controlled substance offense," and was at least eighteen years old at the time he or she committed the instant offense that was also a "crime of violence or a controlled substance offense." U.S. Sentencing Guidelines Manual § 4B1.1(a) (2006). The Guidelines define a "crime of violence" as follows:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that [ ] has as an element the use, attempted use, or threatened use of physical force against the person of another, or [ ] is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 4B1.2(a)(1), (2). The dispute here is whether Thompson's 2002 riot conviction qualifies as a crime of violence.

"[T]he Supreme Court held that sentencing courts must generally assess prior convictions using a 'formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.' " *Snellenberger,* 493 F.3d at 1018–19 (quoting *Taylor v. United States,* 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)). In Washington, "[a] person is guilty of the crime of riot if, acting with three or more other persons, he or she knowingly and unlawfully uses or threatens to use force, or in any way participates in the use of such force, against any other

person or against property." Wash. Rev. Code § 9A.84.010(1). The crime of riot is a class C felony if the actor is armed with a deadly weapon. *Id.* at § 9A.84.010(2)(b). Because one could be convicted of the crime of riot based on use or threat to use force against property, as opposed to a person, the *Taylor* categorical approach would not resolve whether Thompson's riot conviction constituted a crime of violence.

The statutory definition of riot criminalizes some conduct that would not qualify as a predicate offense under section 4B1.2(a)(1). Thus, we must look further. Here, it is necessary to go beyond the mere fact of conviction to reach the logical conclusion that the defendant has committed the qualifying offense. *Snellenberger,* 493 F.3d at 1019.

Accordingly, "[t]o establish that a defendant committed a prior crime of violence, the government must provide the sentencing court with 'the terms of a plea agreement or transcript of [a] colloquy between [the] judge and defendant in which the factual basis for the plea was confirmed by the defendant, or [ ] some comparable judicial record of this information.'" *Id.* at 1019–20 (first alteration added) (quoting *Shepard v. U.S.,* 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)). This is called the "modified categorical approach." *United States v. Kelly,* 422 F.3d 889, 892 (9th Cir.2005). Regardless of which documents are utilized in these circumstances, "any inquiry beyond the language of the convicting statute 'must be narrowly construed' to implement Congressional intent and avoid endless evidentiary hearings concerning prior offenses." *Snellenberger,* 493 F.3d at 1021 (quoting *Shepard,* 544 U.S. at 23 n. 4, 125 S.Ct. 1254).

Applying the rigorous standard of the modified categorical approach, Thompson's riot conviction constitutes a crime of violence. Here, the district court looked at Thompson's amended information as well as Thompson's signed "Statement of Defendant on Plea of Guilty," and the transcript of Thompson's state plea proceedings. By way of those documents, Thompson pleaded guilty to felony riot as charged, affirmed that "[he] was with [his] girlfriend when she hit a guy with a gun ... [and he] also participated in the fight," and affirmed the accuracy of that statement as a factual basis for the offense before the state judge at his plea hearing.

The charging document taken in conjunction with Thompson's plea agreement and plea colloquy suffice to show that Thompson's conviction for riot involved the unlawful use or threat to use force against another person rather than against property, so this particular riot conviction qualifies as a predicate offense under section 4B1.2(a)(1). And, notwithstanding Thompson's argument to the contrary, it seems axiomatic that participating in a fight involves, at the very least, the threatened use of physical force against the person of another as contemplated by section 4B1.2(a)(1). As such, it would constitute a crime of violence under section 4B1.2(a)(1) and mark Thompson as a career offender for sentencing purposes.

**AFFIRMED.**