**UNITED STATES of America**

v.

**Reggie Joe FORBEY, Defendant**

**No. CRIM. 04–126PH.**

United States District Court,
D. Maine.

March 25, 2005.

Richard W. Murphy, Assistant United States Attorney, Portland, ME, for United States of America.

James S. Hewes, Portland, ME, for Reggie Joe Forbey, Defendant.

## SENTENCING MEMORANDUM

HORNBY, District Judge.

The Guideline sentence for this defendant is 37 to 46 months. His Total Offense Level is 17[1] and his Criminal Histo-

---

1. The government contends that a two-level enhancement should be applied under United States Sentencing Guideline § 2K2.1(b)(4),and in the plea agreement the defendant agreed to join in the nonbinding recommendation. Gov't Sentencing Mem. at 3–4 (Docket Item 13); Plea Agreement at 2 (Docket Item 5). But the plain language of the Guideline states that the offense level should be increased by two points "[i]f any *firearm* was stolen, or had an altered or obliterated serial number" (emphasis added). This case involves ammunition, not a firearm. "Firearm" and "ammunition" are separately

defined terms, *see* 18 U.S.C. §§ 921(a)(3), (17)(A); Guideline § 2K2.1, Application Note 1, that do not overlap Instead, Guideline 2K2.1 refers explicitly to "ammunition" from time to time ((b)(2); (b)(5); (b)(6); (c)), but not in this subsection. The only indication that ammunition might qualify for the enhancement comes in Application Note 9 to Guideline § 2K2.1. It instructs the judge not to apply the enhancement if the base offense level is 12 (under (a)(7)) "unless the offense involved a firearm with an altered or obliterated serial number. That is because the base

ry is Category IV.[2] The government has asked me to depart upward to Criminal History Category VI and Offense Level 19 on the basis that 35 criminal history points have not been counted because of age, that the defendant has engaged in an "essentially unbroken pattern of criminal conduct from the time that the defendant reached the age of majority up to the current time" and that the "likelihood of recidivism is extremely high." Gov't Sentencing Mem. at 5–6 (Docket Item 13).

According to United States Sentencing Guideline ("Guideline") § 4A1.3(a)(1), "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." In that case, the sentencing judge is directed to "specify in writing" "the specific reasons why the applicable criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood

that the defendant will commit other crimes." Guideline § 4A1.3(c)(1).

I have determined to grant the government's motion to depart upward, but to a higher sentence than the government requests, because the defendant's criminal history category severely under-represents the seriousness of his criminal history and the virtual certainty that he will commit other crimes. This is my written specification of reasons.

Reggie Joe Forbey is a few weeks shy of his forty-ninth birthday. According to the Presentence Report, Forbey has accumulated twenty-six criminal convictions (not including this one) since he turned twenty-three. His sentences have ranged from fines or probation, at the low end, to ten years' imprisonment (five years suspended) or three-and-one-half to seven years' imprisonment (Forbey served the maximum because of disciplinary problems), at the high end. Although many of the convictions are for minor crimes, four convictions count as violent felonies (escape from an Idaho jail in 1980; a 1980 Montana

---

offense level takes into account that the firearm or *ammunition* was stolen." (Emphasis added). Thus, arguably the language of the Application Note contemplates application of the two-level enhancement in cases involving stolen ammunition where the base offense level is other than 12. Here, the base offense level is 20. But although the commentary to the Sentencing Guidelines is generally authoritative, it does not carry such weight if it "is inconsistent with, or a plainly erroneous reading of" the Guidelines. *Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). A reading of Application Note 9 to apply the § 2K2.1(b)(4) enhancement in a case not involving a stolen firearm is inconsistent with the plain language of § 2K2.1(b)(4). Since this case does not involve a stolen firearm, I do not apply the § 2K2.1(b)(4) enhancement.

**2.** I reject the defendant's argument that he should have a Criminal History Category III.

He argues that under Guideline 4A1.2(a)(1), his state conviction for theft of a truck should not be considered a prior sentence when calculating his criminal history because the possession of the stolen ammunition was an offense that occurred close in time to and continued during the theft of the truck. But the conduct of stealing the truck is a separate offense because it is not part of the federal crime of possessing stolen ammunition. The state sentence for truck theft was "for conduct not part of the instant offense" of possession of stolen ammunition and therefore is a "prior sentence" under Guideline 4A1.2(a)(1). *See United States v. Banashefski*, 928 F.2d 349, 351–53 (10th Cir.1991) (determining that although the unlawful possession of a firearm continued during the theft of a vehicle, the conviction for the vehicle theft was a prior sentence); *see also United States v. Troncoso*, 23 F.3d 612, 616–17 (1st Cir. 1994).

burglary,[3] prisoner assault on a New Hampshire correctional officer in 1992; and second degree assault in New Hampshire in 1994). Since his release from prison in 2001 on the second degree assault charge, he has been convicted of terrorizing (Maine 2001)[4]; carrying a concealed weapon (Maine 2003)[5]; obstructing government administration (Maine 2003); assault and theft (Maine 2003); and the 2003 theft of a truck, the discovery of which led to the federal charge in this case. Before his current crime, in every year since 1987, Forbey has accumulated at least one conviction, except from 1995 to 2000 while he was serving time on the second degree assault, and 2002. Nevertheless, Forbey escapes the highest criminal history category because some of the convictions are too old to count under the Guidelines and because many of them are minor crimes.

In fact, Forbey should be considered an Armed Career Criminal. An Armed Career Criminal is a defendant with three previous convictions for violent felonies whose current crime is being a felon in possession of a weapon or ammunition. Guideline 4B1.4; 18 U.S.C. § 924(e)(1). Forbey is indisputably a previously convicted felon, several times over; in his current crime he possessed ammunition; and he has four previous convictions for violent felonies.[6] According to the statute, an Armed Career Criminal must be sentenced to no less than fifteen years in prison. 18 U.S.C. § 924(e)(1). Forbey will not be sentenced under this statute, however, because the government has chosen not to charge him with the crime of being a felon in possession of ammunition. Instead, it has charged him with possession of stolen ammunition in violation of 18 U.S.C. § 922(j). The Armed Career Criminal penalties do not apply to that conviction, which carries a maximum sentence of ten years. *Id.* § 924(a)(2).

I can understand why the government elected not to charge Forbey with a crime that would have resulted in the fifteen-year minimum sentence. Forbey is not your ordinary felon in possession of a weapon or ammunition. He is a forty-eight-year-old paranoid schizophrenic with daily visual and auditory hallucinations[7] and a lengthy history of substance abuse (alcohol, marijuana, and powder and crack cocaine). Forbey did not possess the ammunition with any intent to use it for its destructive purpose. Instead, he came across it during a garden-variety theft. Spending an evening on a dock in Wells, Maine, he entered a fishing boat that did not belong to him. He proceeded to remove a number of items, including the ammunition (eighty-one rounds, .22 caliber). He apparently intended to trade

---

**3.** In paragraph 24, the Presentence Report describes this offense as a "theft," but the Montana court's "Findings of Fact, Conclusions of Law and Order" issued at the time of Forbey's guilty plea and sentencing (provided to me and both counsel and admitted as a Court exhibit) show that Forbey was charged with and pleaded guilty to two counts of burglary. Such a document satisfies the requirements of *Shepard v. United States,* —— U.S. ——, 125 S.Ct. 1254, 1263, 161 L.Ed.2d 205 (2005).

**4.** The event occurred in 2001; Forbey was convicted in 2002.

**5.** The event occurred in 2003; Forbey was convicted in 2004.

**6.** I have looked for ways in which an Armed Career Criminal charge might have been problematic, and there are none.

**7.** Currently he is taking prescribed Zyprexa while in custody. There is no suggestion that Forbey is incompetent or that he had any insanity defense to the charge.

what he had stolen for alcohol. He also stole a truck, but was stopped for speeding. After attempting to escape, he was found with the ammunition in his possession. He had a blood alcohol content of .06%. He served one year in a Maine jail for theft of the truck. Upon his release, he found himself facing federal charges arising out of the evening's activities. His parents and sister love him deeply, believe that there still is hope for him if he could receive proper care, and speculate that the circumstances of a traumatic birth produced his mental illness and substance abuse. Without a doubt, Forbey's situation is lamentable, and his latest crime was minor as most federal crimes go. If sentencing were only about culpability for the specific offense (here, possession of the ammunition), there are plenty of reasons why Forbey might not deserve to be treated as a standard Armed Career Criminal.

But given Forbey's criminal record (incessant, prolonged, recent and often violent), I conclude that he is exactly the type of defendant that Congress had in mind for the mandatory lengthy sentence. Despite the hopes of his parents and sister, there is nothing to suggest that Forbey has undergone or will undergo a radical change to alter his criminal behavior. Yes, there may be bases for a downward departure under the Guideline sentence for an Armed Career Criminal. But no Guideline departure would allow his sentence to go below the fifteen-year statutory minimum had he been charged as a felon in possession of ammunition.[8] I know that the U.S. Attorney's Office took very seriously its charging decision in this case. The prosecutors must have believed that Armed Career Criminal status created an unconscionable sentence for Forbey, and took what they considered the proper ethical

step. But under the current sentencing regimen, that well-intentioned decision creates a serious potential for sentencing disparity because if someone just like Forbey is arrested in, say, Montana, the U.S. Attorney there might not be so generous. In addition, it conflicts with congressional intent as reflected in the statutory minimum sentence that not even the Guidelines can trump.

For those reasons, I conclude that I should depart upward to the maximum statutory sentence I can impose for the crime actually charged, ten years. In departing, the sentencing judge is instructed to use "as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's [sic]." Guideline § 4A1.3(a)(4)(A). If the highest category, Category VI, is insufficient as it is here, "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a Guideline range appropriate to the case." Guideline § 4A1.3(a)(4)(B). In Guideline terms, the sentence I impose reflects a Criminal History Category VI and Offense Level 24. I choose the ten-year sentence because: (a) it is the closest I can come to what would have been the mandatory minimum sentence had Forbey been convicted as a felon in possession of ammunition; and (b) Forbey's Criminal History score as calculated under the Guidelines drastically under-represents both (i) the seriousness of his past criminal history; and (ii) the likelihood (virtual certainty) that he will continue to commit crimes when he is released.

For these reasons, I also REJECT the

---

8. For example, a diminished capacity departure under Guideline 5K2.13 could not escape the Armed Career Criminal statutory minimum sentence.

plea agreement.[9] I cannot find that "the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines." Guideline 6B1.2(a). Probably there are times in the past when I have simply accepted a plea agreement that resulted in a sentence lower than the real-offense conduct would call for, treating it as a humane effort by the prosecution to provide some needed flexibility to the sentencing process. But in *United States v. Booker*, the Supreme Court reminded us that easy acceptance of such a plea agreement marks a failure on the part of a sentencing judge:

Congress, understanding the realities of plea bargaining, authorized the [United States Sentencing] Commission to promulgate policy statements that would assist sentencing judges in determining whether to reject a plea agreement after reading about the defendant's real conduct in a presentence report (and giving the offender an opportunity to challenge the report). This system has not worked perfectly; judges have often simply accepted an agreed-upon account of the conduct at issue.[10]

— U.S. ——, ——, 125 S.Ct. 738, 762, 160 L.Ed.2d 621 (2005) (citation omitted). Taking the admonition to heart, therefore, I reject the plea agreement in this case.[11]

The resulting Guideline sentence, I conclude, meets the criteria of 18 U.S.C. § 3553(a), *see United States v. Booker*, —— U.S. ——, ——, 125 S.Ct. 738, 765, 160

---

**9.** The written plea agreement does not actually refer to disposition of the Armed Career Criminal charge. At the Rule 11 hearing, the prosecutor made clear that it was the "understanding between the parties" that the felon-in-possession charge (the basis for Armed Career Criminal status) pending in a magistrate judge's case would be dismissed. Tr. at 16:17 to 17:6, 19:14–19. At that time, being unaware that the defendant qualified as an Armed Career Criminal, I did not appreciate the significance of what the prosecutor had agreed to do. I did reserve decision on accepting the "overall plea agreement," *id.* at 20:10–11, but not appreciating its significance, I granted the motion to dismiss the complaint. To his credit, the prosecutor realized that I had not grasped the ramifications of the dismissal and later requested a conference of counsel where he explained matters fully.

**10.** The message appears elsewhere in the opinion as well. For example:

Congress' basic statutory goal—a system that diminishes sentencing disparity—depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction.

\* \* \* \* \* \*

The Sentencing Guidelines ... assume that Congress intended this system to continue. That is why, among other things, they permit a judge to reject a plea-bargained sentence if he determines, after reviewing the presentence report, that the sentence does not adequately reflect the seriousness of the defendant's actual conduct.

125 S. Ct. at 759, 760 (citations omitted). The Guidelines Commentary makes clear that judges are not authorized to "intrude upon the charging discretion of the prosecutor." Guideline § 6B1.2 comment. "However, when the dismissal of charges or agreement not to pursue potential charges is contingent on acceptance of a plea agreement, the court's authority to adjudicate guilt and impose sentence is implicated, and the court is to determine whether or not dismissal of charges will undermine the sentencing guidelines." *Id.*

**11.** I afforded the defendant the opportunity to withdraw his Guilty plea in accordance with Federal Rule of Criminal Procedure 11(c)(5). He declined.

L.Ed.2d 621 (2005) (mandating consideration of the statutory factors), as well as can be expected given the statutory ten-year cap. I therefore apply the Guideline sentence with the upward departure.[12]

So ORDERED.

12. This case confirms once again two axioms whose impact federal sentencing judges see over and over again: (1) statutory mandatory minimum sentences remove flexibility to recognize human individuality; (2) although Congress has taken much sentencing discretion away from judges, prosecutors nevertheless exercise it in charging and plea practices.

One might predict that if discretion is taken away from prosecutors, then law enforcement will nevertheless exercise it. Here, for example, in another jurisdiction the decision might have been never even to seek the federal charges, given the state sentence for theft of the truck. Discretion cannot be removed from the criminal justice system. The important questions are who should exercise it, and where is it most visible so that its use can be examined and assessed.