[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**August 30, 2005**
**THOMAS K. KAHN**
**CLERK**

_____

No. 05-10109
Non-Argument Calendar

_____

D. C. Docket No. 04-00160-CR-J-16-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GUILLERMO RODRIGUEZ-BENAVIDES,
a.k.a. Guillermo B. Rodriguez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 30, 2005)**

Before BLACK, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Guillermo Rodriguez-Benavides ("Rodriguez") appeals his 46-month

sentence for illegal reentry without permission after deportation, in violation of 8 U.S.C. § 1326.

Rodriguez's first argument on appeal is that he pled guilty to the crime of illegal reentry under 8 U.S.C. § 1326(a), which carries a maximum sentence of two years, but was sentenced for the crime of reentry after deportation following an aggravated felony conviction under 8 U.S.C. § 1326(b)(2), which carries a maximum sentence of twenty years. Rodriguez contends that § 1326(b)(2), authorizing a prison term of up to twenty years, defines a separate crime and not an enhancement for crimes committed pursuant to § 1326(a). Therefore, because Rodriguez was convicted under § 1326(a), he purports that his sentence cannot exceed two years. Rodriguez concedes that *Almendarez-Torres v. United States*, 523 U.S. 224, 247, 118 S. Ct. 1219, 1233 (1998), a case which addressed this exact issue, held that an indictment charging a defendant with a violation of 8 U.S.C. § 1326(a) need not allege a defendant's prior aggravated felony conviction to enhance a sentence based on that aggravated felony pursuant to § 1326(b)(2). However, Rodriguez argues that the district court erred because *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348 (2000), and its progeny indicate that a majority of the Supreme Court no longer supports the holding of *Almendarez-Torres*.

Next, Rodriguez argues that because his offense was committed in 2002, two years before Congress amended 42 U.S.C. § 14135a to require all felons to provide a DNA sample, the application of § 14135a to his case would have an impermissible retroactive effect.

Finally, Rodriguez raises a Fourth Amendment challenge to § 14135a, but concedes on appeal that we upheld an "almost identical" state DNA profiling statute against a Fourth Amendment challenge in *Padgett v. Donald*, 401 F.3d 1273 (11th Cir. 2005), and that there is no meaningful distinction between that statute and the federal statute in question here.

## I.

First, Rodriguez claims that he pled guilty to the crime of illegal reentry under 8 U.S.C. § 1326(a), which carries a maximum sentence of two years, but was sentenced for the crime of reentry after deportation following an aggravated felony conviction under 8 U.S.C. § 1326(b)(2), which carries a maximum sentence of twenty years. Rodriguez contends that § 1326(b)(2), authorizing a prison term of up to twenty years, defines a separate crime and not an enhancement for crimes committed pursuant to § 1326(a). Therefore, because Rodriguez was convicted under § 1326(a), he purports that his sentence cannot exceed two years.

The Supreme Court addressed this issue in *Almendarez-Torres*, 523 U.S. at

3

226, 118 S. Ct. at 1222. There, the Supreme Court held that § 1326 (b)(2) "is a penalty provision, which simply authorizes a court to increase the sentence . . . [i]t does not define a separate crime." *Id*. at 226, 118 S. Ct. at 1222. To date, *Almendarez-Torres* remains good law. Therefore, we conclude that the district court did not err in enhancing Rodriguez's sentence under § 1326(b)(2).

The Supreme Court declined to revisit *Almendarez-Torres* in *Apprendi*, holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and probed beyond a reasonable doubt." *Apprendi*, 530 U.S. at 489-90, 120 S. Ct. at 2362-63. Recently, in *Booker*, 543 U.S. ___, 125 S. Ct. 738, 756, the Supreme Court reaffirmed *Apprendi* and left undisturbed its holding in [*Almendarez-Torres v. United States*, 523 U.S. 224, 227, 118 S. Ct. 1219, 1233 (1998)], that recidivism is *not* a separate element of an offense that the government is required to prove beyond a reasonable doubt." *United States v. Orduno-Mireles*, 405 F.3d 960, 962 (11th Cir. 2005).

While recent decisions, including *Shepard v. United States*, 544 U.S. ____, 125 S. Ct. 1254 (2005), may arguably cast doubt on the future prospects of *Almendarez-Torres*, the Supreme Court has not explicitly overruled *Almendarez-Torres*, and, as a result, we must follow *Almendarez-Torres*. *See United States v.*

4

*Camacho-Ibarquen*, 410 F.3d 1307, 1316 n.3 (11th Cir. 2005).  Further, Rodriguez does not successfully distinguish his case from *Almendarez-Torres*.  The fact that the defendant in *Almendarez-Torres* admitted that he was deported due to convictions for three aggravated felonies, as opposed to Rodriguez's admission to only one previous state conviction for a crime that allegedly was an aggravated felony does not adequately distinguish the instant case from *Almendarez-Torres*.

Because *Almendarez-Torres* remains controlling precedent, the district court did not err in enhancing Rodriguez's sentence under § 1326(b)(2).  Upon review of the record and consideration of the parties' briefs, we find no reversible error as to this issue.

II.

Rodriguez next argues that because his offense was committed in 2002, two years before Congress amended 42 U.S.C. § 14135a to require all felons to provide DNA samples to the Bureau of Prisons or to the probation office, the application of § 14135a to his case had an impermissible retroactive effect.  Rodriguez contends that the DNA sampling requirement imposes a new duty or obligation on him which carries serious consequences.

When a defendant fails to raise a criminal claim in the district court, we review for plain error.  *See United States v. Olano*, 507 U.S. 725, 731-32, 113 S.

5

Ct. 1770, 1776 (1993). We may correct an error under the plain error standard where (1) an error occurred, (2) the error was plain, (3) the error affects substantial rights, and (4) "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*., 507 U.S. at 732-36, 113 S. Ct. at 1777-79. In order to qualify as "plain" error, the error must be "obvious" or "clear under current law." *United States v. Candelario*, 240 F.3d 1300, 1309 (11th Cir. 2001). "[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

The DNA Identification Act of 1994, part of the Violent Crime Control and Law Enforcement Act of 1994, authorized the Federal Bureau of Investigation to create an index of DNA samples from persons convicted of crimes. DNA Identification Act of 1994, § 210304(a), Pub. L. No. 103-332, 108 Stat. 1796. The DNA Analysis Backlog Elimination Act of 2000 ("2000 DNA Act") authorized the collection of DNA samples from federal prisoners, parolees, and probationers. DNA Analysis Backlog Elimination Act of 2000, § 3, Pub. L. No. 106-546, 114 Stat. 2726 (2000) (codified at 42 U.S.C. § 14135a). The 2000 DNA Act authorized the collection of a DNA sample from persons convicted of a limited number of

offenses, including murder, sexual abuse, sexual exploitation or abuse of children, and robbery or burglary. *Id.* The Justice For All Act of 2004 ("2004 DNA Act") amended 42 U.S.C. § 14135a to expand the list of qualifying offenses for collection of DNA samples to include any felony, any offense under chapter 109A of Title 18, any crime of violence, and any attempt or conspiracy to commit any of those offenses. Justice For All Act of 2004, § 203, Pub. L. No. 108-405, 118 Stat. 2260 (codified at 42 U.S.C. 14135a(d)).

The Supreme Court has explained that "the presumption against retroactive legislation is deeply rooted in our jurisprudence." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S. Ct. 1483, 1496 (1994). In determining whether a civil statute is impermissibly retroactive, we must look to (1) whether Congress has expressly prescribed the statute's proper reach, and, if not, (2) whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. *Id.* at 280, 114 S. Ct. at 1505.

While the Supreme Court was not explicit in its holding, *Landgraf* has been construed as applying to the retroactivity of civil statutes. *See Exxon Mobil Corp. v. Allapattah Svcs., Inc.,* 545 U.S. __, 125 S. Ct. 2611, 2629. It is the *Ex Post*

7

*Facto* Clause that applies to the retroactive applications of criminal statutes. *Landgraf*, 511 U.S. at 266. To prevail on an *ex post facto* claim, a defendant must show "both that the law he challenges operates retroactively (that it applies to conduct before its enactment) and that it raises the penalty from whatever the law provided when he acted." *Johnson v. United States*, 529 U.S. 694, 699, 120 S. Ct. 1795, 1800 (2000). Because Rodriguez improperly construed his claim as a challenge under *Landgraf* and did not raise an *ex post facto* challenge to the application of the 2004 DNA Act, this argument is abandoned on appeal and deemed waived. *See Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998).

Assuming Rodriguez was correct in arguing that the *Landgraf* analysis applies in this case and the district court's decision should be reviewed for plain error, his claim fails under the second prong of the plain error standard. Rodriguez has not pointed to any caselaw from our Circuit or the Supreme Court stating that (1) Congress has expressly prescribed the proper reach of the 2000 DNA Act or 2004 DNA Act, or (2) the application of the 2004 DNA Act or the 2000 DNA Act to an individual who committed an offense prior to the enactment of the statute would have an impermissible retroactive effect. Therefore, there was no plain error. *See Lejarde*, 319 F.3d at 1291.

Even assuming that Rodriguez construed his challenge under the *Ex Post*

*Facto* Clause, his claim would fail under the plain error test. Neither we nor the Supreme Court have stated that the 2000 DNA Act or the 2004 DNA Act operates retroactively. *See id.* Therefore, Rodriguez has failed to establish that the district court's requiring him to provide a DNA sample was plain error. Accordingly we affirm as to this issue.

III.

Rodriguez finally argues that 42 U.S.C. § 14135a violates his Fourth Amendment rights. Rodriguez concedes that we upheld a nearly identical state DNA profiling statute against a Fourth Amendment challenge in *Padgett v. Donald*, 401 F.3d 1273 (11th Cir. 2005), and that there is no meaningful distinction between that statute and the federal statute at issue in this case. However, Rodriguez raises the Fourth Amendment issue to preserve it for later review.

We review *de novo* a district court's legal conclusions as to the constitutionality of a statute. *Doe v. Kearney*, 329 F.3d 1286, 1293 (11th Cir. 2003).

In *Padgett*, we held that the Georgia statute, which required convicted, incarcerated felons to provide a sample of their DNA to the Georgia Department of Corrections for analysis and storage in a data bank maintained by the Georgia

Bureau of Investigation, did not violate the Fourth Amendment. *Padgett*, 401 F.3d at 1280. We applied a totality of the circumstances analysis to determine whether the Georgia statute was reasonable. We held that "Georgia's legitimate interest in creating a permanent identification record of convicted felons for law enforcement purposes outweighs the minor intrusion involved in taking prisoners' saliva samples and storing their DNA profiles, given prisoners' reduced expectation of privacy in their identities." *Id*.

There is no meaningful distinction between the Georgia statute analyzed in *Padgett* and the federal DNA statute at issue in this case. The statutes are similar in almost every respect. They only differ slightly in their specificity of the means authorized for obtaining a sample. Because the Georgia and federal DNA statutes are analogous, our reasoning under *Padgett* applies. Therefore, we find no error as to this issue.

For the foregoing reasons, we affirm the district court's ruling.

**AFFIRMED.**