[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 28, 2005
THOMAS  K. KAHN
CLERK

No. 04-14918
Non-Argument Calendar

_____

D. C. Docket No. 02-20851-CR-AJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HENSEL JOSEPH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 28, 2005)**

Before BIRCH, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Hensel Joseph appeals his sentences of 151 months imprisonment, imposed

following his guilty plea for bank robbery, in violation of 18 U.S.C. § 2113(a). Because Joseph preserved his Booker challenge, the government must show harmless error in the district court's imposition of sentence under a mandatory guidelines scheme. Here, the record does not establish that the error was harmless, and, therefore, we **VACATE** and **REMAND** for sentencing.

## I. BACKGROUND

Joseph was charged by superseding indictment with four counts of bank robbery by threat or intimidation, in violation of 18 U.S.C. § 2113(a). He agreed to plead guilty without a written plea agreement, in exchange for which the government agreed to recommend sentencing at the low end of the guidelines range.

At the change-of-plea hearing, the court noted that Joseph had undergone psychiatric evaluation and was found to be competent. The government proffered that Joseph robbed two Bank of America institutions and two Washington Mutual institutions by handing the tellers threatening notes. Joseph agreed that the factual proffer was correct, and he entered his guilty plea.

The probation officer prepared a presentence investigation report ("PSI"), noting that the four robberies could not be grouped together because they constituted separate and distinct harms. Calculating each group individually, with

2

a group representing each robbery, the probation officer assigned the first Bank of America robbery a base offense level of 20 under U.S.S.G. § 2B3.1(a), with a 2-level increase for taking property of a financial institution, a 2-level increase for intimidation under U.S.S.G. § 2B3.1(b)(2)(F) because Joseph told the teller he had a gun, and a 1-level increase for amount of loss under U.S.S.G. § 2B3.1(b)(7)(B), resulting in an adjusted offense level of 25 for Group 1. The second and third groups involved the Washington Mutual robberies, each with a base offense level of 20 and a 2-level increase for taking the property of a financial institution, and a 3-level increase for gesturing that he had a firearm, U.S.S.G. § 2B3.1(b)(2)(E), resulting in an adjusted offense level of 25 for Groups 2 and 3. Finally, the remaining Bank of America robbery was calculated with a base offense level of 20, and a 2-level increase for taking the property of a financial institution, and a 2-level increase for threat of death, U.S.S.G. § 2B3.1(b)(2)(F), resulting in an adjusted offense level of 24 for Group 4.

The probation officer then calculated the multiple count adjustment, assigning one unit to each group, for a total of four units. Those four units were added to the greater adjusted offense level of 25, resulting in a combined offense level of 29. Joseph received an enhancement as a career offender under U.S.S.G. § 4B1.1, bringing his offense level to 32, which was reduced by 3-levels for

3

acceptance of responsibility, resulting in a total adjusted offense level of 29. The probation officer listed Joseph's lengthy criminal history, totaling sixteen points, resulting in a criminal history category VI due to the number of points and Joseph's status as a career offender. With an adjusted offense level of 29 and a criminal history category VI, Joseph's guidelines range was 151 to 188 months imprisonment.

Joseph objected to the PSI, arguing that Blakely[1] rendered the guidelines unconstitutional and that enhancements for use of a firearm and threats of death were improper. He further alleged that he should not have qualified as a career offender. Finally, he moved for a downward departure based on diminished capacity.

At sentencing, Joseph renewed his Blakely objection and asserted that his sentence could not be enhanced based on prior convictions in light of Shepard v. United States, 544 U.S. __, __, 125 S. Ct. 1254(2005). The court overruled the objections, concluding that Blakely had not invalidated the federal sentencing guidelines and that the court was bound by Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219 (1998). The court granted the government's motion for a one-level reduction for acceptance of responsibility. After considering

_____

[1] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004).

Joseph's motion for a downward departure, the court stated that it understood it had the discretion to depart, but that it declined to do so under the facts of the case. Although the court noted Joseph's mental condition, the court determined that his claim that he committed the offenses so he could receive medical treatment was unconvincing in light of the fact that he committed four robberies. Additionally, the court considered Joseph's lengthy criminal history and found that a sentence was necessary both to punish Joseph and for deterrence. The court then sentenced Joseph to 151 months imprisonment on each count to be served concurrently, 3 years supervised release each count to be served concurrently, and order him to pay restitution in the amount of $20,528.92. Joseph now appeals.

## II. DISCUSSION

In United States v. Booker, 534 U.S. ___, 125 S. Ct. 738 (2005),[2] the Supreme Court held that Blakely applied to the federal sentencing guidelines and that the Sixth Amendment required that any fact that increased a defendant's sentence beyond the maximum sentence authorized by the facts established by a plea or a jury verdict must be admitted by the defendant or proven to a jury beyond a reasonable doubt. Id. at __, 125 S. Ct. 755-56. We have explained that a Booker error also results from the district court's use of a mandatory guidelines scheme,

---

[2] We now review Blakley arguments under Booker.

5

even in the absence of any constitutional error. United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

Because Joseph preserved his Booker challenge in the district court, we review the sentences de novo, but will reverse only if the error was not harmless. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005) (per curiam). The burden is on the government to show that the error was harmless and there are two standards for the harmless error test. To show that a constitutional error was not harmless, the government must demonstrate that the error did not affect the defendant's substantial rights.[3] To show statutory harmless error, the government is held to a less demanding standard, but must show that, viewing the proceedings in their entirety, the error had no effect or a very slight effect on the sentence. United States v. Mathenia, 409 F.3d 1289, 1291-92 (11th Cir. 2005) (per curiam).

Here, there was no constitutional error.[4] An enhancement based on a prior conviction, even if not admitted by the defendant, does not represent a constitutional Booker error. United States v. Orduno-Mireles, 405 F.3d 960, 962-63 (11th Cir. 2005), petition for cert. filed, (U.S. Jul. 1, 2005) (No. 05-5141);

_____

[3] In other words, where it is clear "beyond a reasonable doubt, that the error did not contribute to the defendant's ultimate sentence." Mathenia, 409 F.3d at 1291 (citation omitted).

[4] Joseph does not argue on appeal that there was constitutional error in his sentences. Therefore, he has abandoned that issue. Rowe v. Schreiber, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998).

United States v. Camacho-Ibarquen, 410 F.3d 1307, 1315 (11th Cir. 2005) (per curiam).  The Supreme Court's decision in Shepard does not alter this conclusion. United States v. Gallegos-Aguero, 409 F.3d 1274, 1276-77 (11th Cir. 2005) (per curiam) ; Camacho-Ibarquen, 410 F.3d at 1316 n.3.

Additionally, although Joseph received enhancements based on his death threats and gestures that he carried a firearm, he admitted that he threatened the bank tellers by handing them notes and there was no constitutional Booker error. United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005).

The government correctly concedes that there was statutory error in the imposition of the guidelines as mandatory, but it contends that the error was harmless.[5]  We disagree.

Where it is unclear whether the court would have imposed the same sentence but for the mandatory guidelines, the government cannot show that the error was harmless.  United States v. Davis, 407 F.3d 1269, 1271-72 (11th Cir. 2005) (per curiam).  A sentence at the low end of the guidelines range, without more, does not establish that the error was harmless.  See United States v. Fields, 408 F.3d 1356,

---

[5]  Generally, we have concluded that the error was harmless when the district court has indicated that it would impose the same sentence under an advisory guidelines scheme.  Mathenia, 409 F.3d at 1292-93; United States v. Petho, 409 F.3d 1277, 1280 (11th Cir. 2005) (per curiam); United States v. Robles, 408 F.3d 1324, 1327 (11th Cir. 2005) (per curiam).

1361 (11th Cir. 2005) (concluding, under plain error review, that a sentence at the low end of the guidelines was not sufficient to show that the mandatory application of the guidelines affected the defendant's substantial rights).

Here, the court did not say that it would impose the same sentence if the guidelines were advisory, and it is merely speculation what sentence the court would have imposed. See Davis, 407 F.3d at 1271 (rejecting government's argument that Booker error was harmless when the district court exercised its discretion and granted a downward departure because, although the court had discretion in deciding whether to depart from the guidelines and the extent of that departure, it did not have the discretion to consider other factors). Although the district court sentenced Joseph at the low end of the guidelines range and it indicated the need to punish Joseph and deter future criminal conduct, there is nothing in the record to indicate that the court would have imposed the same sentence had it known the guidelines were merely advisory, and these statements are insufficient for the government to meet its burden considering that the burden is not easy for the government to meet. Mathenia, 409 F.3d at 1292 (explaining that the non-constitutional error test was "as difficult for the government to meet . . . as it is for a defendant to meet the third-prong prejudice standard for plain error review); see also United States v. Garcia, 405 F.3d 1260, 1275-76 (11th Cir.

8

2005)); <u>Paz</u>, 405 F.3d at 948-49.

Additionally, the court's denial of a downward departure is not dispositive because the court determined that Joseph had not shown that he was entitled to a departure. Although the court had discretion to depart, it did not have discretion to determine what bases were appropriate for a departure. Thus, we do not know what the court would have done under an advisory guidelines scheme.

## III.  <u>CONCLUSION</u>

Therefore, because the government cannot meet its burden to show harmless error, we **VACATE** and **REMAND** for resentencing under an advisory guidelines scheme.