[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 15, 2009
THOMAS K. KAHN
CLERK

No. 08-13097
Non-Argument Calendar
_____

D.C. Docket No. 07-00152-CR-VEH-RRA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID SCOTT LEWIS YOUNG,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Alabama

_____

(July 15, 2009)

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

David Scott Lewis Young ("Young") appeals his 120-month sentence for

being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

After review, we vacate Young's sentence and remand for resentencing.

# I. Factual Background

Young pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and did so without a written plea agreement. At the plea hearing, the government offered the following factual basis for the plea:

> The government would expect the evidence to show that on or about April 6, 2007, deputies from the Madison County [Alabama] Sheriff's Office responded to a burglary call at 244 Wilson Manley Road, at Owens Cross Roads, Alabama. The homeowner found Mr. Young inside the residence and chased him. Deputies responded to and located Young near Williams Service Station on Gene Carpenter Road in Owens Cross Roads. Deputies observed Young to be in possession of a firearm, a Smith and Wesson 9 millimeter pistol stolen from the above referenced residence.

When the district court asked Young whether the brief outline of the facts was "substantially correct," he answered affirmatively. And when the district court asked whether he did the things that the government said that he did, Young said that he did.

As to sentencing, the base offense level for Young's offense—being a felon in possession of a firearm—turned on whether he had one or more prior felony convictions for a "crime of violence." Compare U.S.S.G. § 2K2.1(a)(2) (setting a base offense level of 24 if defendant has "at least two felony convictions of . . . a crime of violence"), with U.S.S.G. § 2K2.1(a)(4) (setting a base offense level of 20 if defendant has "one felony conviction of . . . a crime of violence"). The

2

Presentence Investigation Report ("PSI") set Young's base offense level at 24, pursuant to U.S.S.G. § 2K2.1(a)(2), because Young had two prior felony convictions for a "crime of violence"—namely, two Alabama convictions for escape.

As to the nature of the two convictions, the PSI reported that Young was convicted "on March 4, 2002, for Escape 1st, in the Coosa County, Alabama, Circuit Court (CC01-132); and on September 29, 2003, for Escape 2nd, in the Madison County, Alabama, Circuit Court (CC03-2837). Therefore, the base offense level is 24." In the district court, the parties did not dispute that the September 29, 2003 escape conviction was a "crime of violence," but they hotly disputed whether the March 4, 2002 conviction was a "crime of violence." The PSI, in paragraph 28, described Young's March 4, 2002 escape conviction as failing to report back to a "work release center" as follows:

> According to the United States Probation Office in the Middle District of Alabama, on February 16, 2001, the defendant was an inmate at the Alexander City, Alabama, Work Release Center in Coosa County, Alabama. On that day, the defendant failed to check back in at the work center after work, and he was subsequently placed on escape status. The defendant surrendered himself at the work release center the following day.

The PSI recommended increasing Young's offense level to 29 by adding: (1) two levels, pursuant to U.S.S.G. § 2K2.1(b)(4)(A), because the firearm was

stolen; (2) four levels, pursuant to U.S.S.G. § 2K2.1(b)(6), because Young committed the felony possession crime while committing the felony offense of burglary; and (3) two levels, pursuant to U.S.S.G. § 3C1.2, because Young "recklessly created a substantial risk of death or serious bodily injury to another person when he fled from the officers, held a pistol to his head, and caused officers to prepare to fire their weapons;" and by then subtracting: (4) two levels, pursuant to U.S.S.G. § 3E1.1(a), for accepting responsibility; and (5) one level, pursuant to U.S.S.G. § 3E1.1(b), because Young "timely provided complete information concerning his involvement in the offense, or timely notified authorities of his intent to enter a guilty plea." Young's total adjusted offense level of 29 and criminal history category of VI yielded an advisory guidelines range of 151 to 188 months in prison. Because the guideline range exceeded the statutory maximum of 120 months, see 18 U.S.C. 924(a)(2), the statutory maximum became the guideline sentence, pursuant to U.S.S.G. § 5G1.1(a).

Young made several written objections to the PSI prior to sentencing. First, Young argued that his base offense level should have been 20—not 24—because his March 4, 2002 escape conviction was not a "crime of violence." Young's counsel pointed out that Young's escape conviction was a walkaway while he was on work release. His counsel directed the court to paragraph 28 of the PSI, which

4

described Young's escape as a failure to check back in at the work release center after work and stated that Young surrendered to the center the following day. Although the government argued that the district court could not look beyond the charged escape offense, the government did not introduce the indictment or sentence relating to this state escape conviction. Indeed, neither the PSI nor the government ever identified the Alabama statute under which Young was convicted (either in the district court or on appeal).[1]

When the district court heard Young's objection, the Supreme Court had not yet rendered its decision in Chambers v. United States, 555 U.S. —, 129 S. Ct. 687 (2009), which concluded that a failure to report to a penal institution crime is not a "violent felony" under the Armed Career Criminal Act ("ACCA").[2]  129 S. Ct at

[1]The most that the PSI said was "Escape 1st."  Perhaps we could surmise that "Escape 1st" meant escape in the first degree, and we have located an Alabama statute providing that:
> A person commits the crime of escape in the first degree if:
> > (1) He employs physical force, a threat of physical force, a deadly weapon or a dangerous instrument in escaping or attempting to escape from custody; or
> > (2) Having been convicted of a felony, he escapes or attempts to escape from custody imposed pursuant to that conviction.

See Ala. Code § 13A-10-31(a) (1975).  Even if this was the correct statute, we still would not know what subsection Young violated, and the government bears the burden of showing that Young's escape conviction was a "crime of violence."  See United States v. Young, 527 F.3d 1274, 1277 (11th Cir.), cert. denied, – U.S. –, 129 S. Ct. 616 (2008).

[2]In this Circuit, there is no material difference between the ACCA's use of the phrase "violent felony" and the guidelines' use of the phrase "crime of violence."  See United States v. Harrison, 558 F.3d 1280, 1291-92 (11th Cir. 2009); United States v. Archer, 531 F.3d 1347, 1350 n.1 (11th Cir. 2008).  The phrases are coterminous.  Harrison, 558 F.3d at 1291 (noting that the phrases are "identical . . . in all material respects").  Although these cases discuss the phrase

5

693. At the 2008 sentencing hearing, both the government and the district court relied on United States v. Gay, 251 F.3d 950 (11th Cir. 2001),[3] which held that "a prior escape conviction qualifies as a 'crime of violence.'" 251 F.3d at 954. In response to Young's objection, the government argued that Gay was controlling. Although the district court looked to the undisputed facts of Young's underlying escape conviction outlined in the PSI (i.e., Young failed to report back to a work release center) and treated them as true, it overruled Young's objection based on Gay.

In addition to the crime-of-violence issue, Young also argued at sentencing that: (1) the application of the two-level enhancement for the stolen firearm and the four-level enhancement for using the firearm in a burglary constituted improper double counting; (2) the two-level enhancement for obstruction of justice should not have applied because his three-hour standoff with the police posed no risk of harm to anyone other than himself; and (3) any enhancement based on facts to which Young did not admit ran afoul of Apprendi v. New Jersey,

"crime of violence" in U.S.S.G. § 4B1.2(a), "crime of violence" means the same thing in U.S.S.G. § 2K1.1(a)(2), the guideline provision setting the base offense level here, as it does in § 4B1.2(a). See U.S.S.G. § 2K2.1 cmt. n.1 (stating that "'[c]rime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2."

[3]The Georgia statute at issue in Gay made it illegal to "'intentionally escape[] from . . . custody,'" or "'intentionally fail[] to return as instructed to lawful custody.'" Gay, 251 F.3d at 952-53 (quoting O.C.G.A. § 16-10-52(a)(1), (5)).

530 U.S. 466, 120 S. Ct. 2348 (2000), and <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531 (2004).

The district court overruled each objection and adopted the factual statements contained in the PSI. It found Young's offense level was 29 and his criminal history category was VI, yielding an advisory guidelines imprisonment range of 120 months. After considering the 18 U.S.C. § 3553(a) factors, the district court imposed a 120-month sentence. Young appeals.

## II. Discussion

Young raises a number of challenges to his sentence. We address each in turn.

### A. Crime-of-Violence Issue

Relying on <u>Chambers</u>, Young argues that the district court erred by treating his March 4, 2002 escape conviction as a "crime of violence" within the meaning of U.S.S.G. § 2K2.1(a)(2) and setting his base offense level at 24. As we note above, the Supreme Court in <u>Chambers</u> held that the failure to report to a penal institution crime is not a "violent felony" within the meaning of the ACCA. 129 S. Ct at 693. Because the ACCA defines a "violent felony" the same way as the guidelines define a "crime of violence," Young argues that <u>Chambers</u> means that

7

his escape conviction is not a "crime of violence" within the meaning of the guidelines.[4]

On appeal, the government concedes that Young was improperly sentenced in light of Chambers. The government's brief states: "[T]he government is unable to meaningfully distinguish Young's escape conviction from that at issue in Chambers. Thus, Young's conviction for failing to report back to a work release center should not have been deemed a 'crime of violence' under the Sentencing Guidelines." Appellee's Br. at 9. In addition, no party claims on appeal that the district court improperly looked to the facts in the PSI that showed the conduct in Young's March 4, 2002 escape conviction was a failure to report back to a work release center.[5] In fact, the government did not introduce a judgment of conviction or tell the district court which Alabama escape statute Young violated. It is thus not surprising that the government now concedes that it cannot show that Young's March 4, 2002 escape conviction is a "crime of violence."

---

[4]See supra note 2.

[5]In other words, neither party raises an issue under Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005). Thus, nothing we say here expresses any opinion on whether information contained in the PSI implicates our precedents with respect to Shepard-approved documents. See United States v. Lopez-Garcia, 565 F.3d 1306, 1323 (11th Cir. 2009) (noting that even though "[w]e have yet to specifically address whether reliance on a PSI is permissible under Shepard, . . . it is not necessary [where defendant] does not contend that the district court's reliance on the PSI was erroneous . . . [and] does [not] dispute in any significant way the facts set forth in the PSI"); see also United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009).

Therefore, given the undisputed facts in the PSI, the government's concession, and the defendant's _explicit_ stipulation and reliance on the facts of the PSI,[6] we conclude that Young's March 4, 2002 offense consisted only of his failure to report back to his work release center while he was incarcerated and does not constitute a "crime of violence." We vacate his sentence on this ground alone.[7]

## B. Sentence Enhancement Challenges

Young also raises a number of challenges to the district court's application of the sentencing enhancements.[8] First, he argues that the district court's

---

[6]At the sentencing hearing, Young's attorney directed the court to the:
> presence report paragraph 28 wherein it states the details of the escape first in Coosa County and indicates . . . that he was at the Alexander work release facility, and he failed to check back in at the work release center after work, and he was placed on escape status, and he surrendered himself at the work release center the following day. So that would be our support for that the factual basis for that case.

[7]Because the government concedes that it cannot distinguish Young's case from Chambers, we need not address whether Chambers requires us to overrule our precedent in Gay.

[8]We review de novo a district court's interpretation and application of the Sentencing Guidelines. United States v. Louis, 559 F.3d 1220, 1224 (11th Cir.), cert. denied, 129 S. Ct. 2453 (2009); United States v. Miranda, 348 F.3d 1322, 1330 (11th Cir. 2003). We review de novo a claim that the district court double counted a sentencing factor. United States v. Dudley, 463 F.3d 1221, 1226 (11th Cir. 2006). And "[w]e review the district court's findings of fact related to the imposition of sentencing enhancements . . . for clear error." United States v. Clarke, 562 F.3d 1158, 1165 (11th Cir. 2009). "Under this standard, we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." Id. (quotation marks omitted).

enhancements under U.S.S.G. § 2K2.1(b)(4)(A) and (b)(6) constituted impermissible double counting.

"'Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" United States v. Dudley, 463 F.3d 1221, 1226-27 (11th Cir. 2006) (quoting United States v. Matos-Rodriguez, 188 F.3d 1300, 1309 (11th Cir. 1999)). Unless the guidelines direct otherwise, this Court presumes "that the Sentencing Commission intended separate guideline sections to apply cumulatively." Id. at 1227. "'Double counting a factor during sentencing is permitted if the Sentencing Commission . . . intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing.'" Id. (quoting United States v. Stevenson, 68 F.3d 1292, 1294 (11th Cir. 1995)) (alteration in original). Further, "[t]he offense level adjustments from more than one specific offense characteristic within an offense guideline are applied cumulatively (added together) unless the guideline specifies that only the greater (or greatest) is to be used." U.S.S.G. § 1B1.1 cmt. n.4(A).

The district court did not err in applying the two-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A). Young contends that it is impermissible double

counting to apply the § 2K2.2(b)(4)(A) enhancement based on the firearm being stolen because the basis for his conviction was being a felon in possession of a firearm. In his view, the theft and the possession "were one in the same." However, the enhancement, which was based on Young's theft of a firearm, was not fully accounted for by Young's base offense level, which was based on Young's being a felon in possession of a firearm, U.S.S.G. § 2K2.1(a)(2). A felon can impermissibly possess a firearm without stealing it. Thus, Young's enhancement for stealing the firearm that he impermissibly possessed does not constitute impermissible double counting.

Young also argues that the district court erred by applying a four-level enhancement, under U.S.S.G. § 2K2.1(b)(6), for possession of "any firearm . . . in connection with another felony offense." The felony in this case was Young's burglary of a home. In the plea colloquy, Young admitted that detectives responded to a burglary call at the home of another person in Owens Cross Roads, Alabama, that he was in the home, that he was chased out by the homeowner, and that he was in possession of a firearm he stole from that residence. Young does not argue that these facts are insufficient to show, by a preponderance of the evidence, that he committed the felony offense of burglary. See United States v. Smith, 480 F.3d 1277, 1280-81 (11th Cir. 2007) (noting that the government has

the burden of proving, "by a preponderance of the evidence, the facts necessary to support [a] sentencing enhancement"). Rather, Young argues that this enhancement is duplicative with U.S.S.G. § 2K2.1(b)(4)(A), which imposes a two-level enhancement for possession of a stolen firearm.

We find no impermissible double counting in this regard either. The four-level increase, under § 2K2.1(b)(6), accounts for the fact that Young possessed the gun in connection with his burglary of a home in Owens Cross Roads, Alabama. The two-level increase, under § 2K2.1(b)(4)(A), for possessing a stolen gun does not account for the harm involved with possessing a gun in the course of burglarizing a dwelling. Possessing a stolen gun is one thing. But possessing a stolen gun that one obtains by burglarizing a dwelling is quite another. And the guidelines reflect that difference.[9]

Lastly, Young asserts that he should not have received a two-level increase under U.S.S.G. § 3C1.2 for reckless endangerment during flight, because his conduct was more akin to the behavior outlined in U.S.S.G. § 3C1.1, which deals with obstructing or impeding the administration of justice. Section 3C1.2 authorizes a two-level increase "[i]f the defendant recklessly created a substantial

_____

[9]The § 2K2.1(b)(6) enhancement applies when "a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm." U.S.S.G. § 2K2.1 n.14(B).

12

risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."

For starters, at the plea hearing, Young admitted that law enforcement officials were forced to engage in a "three-hour stand-off with Young who was threatening to shoot himself with a firearm before surrendering the firearm to deputies." The PSI confirms this, too. The PSI states that "the officers on the scene had their own firearms pointed at [Young] because [he] threatened suicide by putting the firearm to his head. After three hours of negotiation, [Young] subsequently released the firearm and was placed into custody. According to the government, the firearm was loaded." The PSI further states that the incident occurred in congested areas where the general public was at risk:

> Not knowing whether or not [Young] would fire or attempt to fire at other individuals, the officers aimed their own firearms at [Young] for protection and security purposes. According to [Investigator] Chaffin, the instant offense occurred during the middle of the day, behind a congested service station, with a hardware store located next to the service station. There were individuals who were at the service station at the time of the instant offense. This conduct also occurred on a congested four-lane road where the general public was at risk to be fired upon.[10]

---

[10]Young did not object to the facts contained in the paragraphs of the PSI where this information was contained.

The district court adopted the facts of the PSI and specifically noted that "the particular facts of this case did create a substantial risk of death or serious bodily injury to another person, and [Young] was clearly fleeing." These findings are supported by the record and thus are not clearly erroneous. We find no reversible error.

## C. Constitutional Error

Young argues that, pursuant to Apprendi and Blakely, his sentence violates the Sixth Amendment because he was never charged with or convicted by a jury of a burglary, but yet his sentence was enhanced under U.S.S.G. § 2K2.1(b)(6), for possession of a firearm "in connection with another felony offense."[11]

Under Apprendi, any fact that increases the penalty for a crime beyond the prescribed "statutory maximum" must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 490, 120 S. Ct. at 2362-63. And under Blakely, the "statutory maximum" is the maximum sentence a judge may impose based solely on facts admitted to by the defendant or reflected by the jury's verdict. 542 U.S. at 303-04, 124 S. Ct. at 2537. Here, Young's actual sentence does not exceed the

---

[11]We review constitutional sentencing issues de novo. See United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).

statutory maximum. Thus, <u>Apprendi</u> and <u>Blakely</u> do not apply.[12] Furthermore, Young admitted to the facts underlying the basis for the burglary enhancement and was sentenced under an advisory guidelines regime. Therefore, his sentence does not violate the Sixth Amendment. <u>See</u> <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1300 (11th Cir. 2005). After review, we find no error under <u>Apprendi</u> or <u>Blakely</u>.[13]

In conclusion, we vacate Young's sentence solely based on the crime-of-violence issue and remand for resentencing.

**VACATED AND REMANDED.**

---

[12]Indeed, in his brief, Young concedes that his position is not legally tenable and emphasizes that he only "preserves the issue in the event that the Supreme Court revisits" the issue.

[13]Young raises a challenge to the substantive reasonableness of his 120-month sentence. But given that his sentence is vacated and his case is remanded for resentencing, we need not evaluate the substantive reasonableness issue at this time. <u>See</u> <u>United States v. McVay</u>, 447 F.3d 1348, 1356 (11th Cir. 2006).