People v Shuler (2026 NY Slip Op 50104(U))

[*1]

People v Shuler

2026 NY Slip Op 50104(U)

Decided on January 30, 2026

Supreme Court, Bronx County

Rodriguez-Morick, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 30, 2026
Supreme Court, Bronx County

The People of the State of New York

againstMorgan Shuler, Defendant.

Indictment No. 3073-2015

Darcel D. Clark, District Attorney, Bronx County by Assistant District Attorney Joshua P. Weiss for the People of New York.Office of the Appellate Defender by Samuel Steinbock-Pratt, Esq. for the Defendant.

Jeanette Rodriguez-Morick, J.

AMENDED DECISION AND ORDER [FN1]
,[FN2]

Defendant Morgan Shuler was adjudicated a persistent violent felony offender ("PVFO") under Penal Law § 70.08 based upon a conviction after a jury trial of several class D violent felony offenses and in light of his two prior violent felony convictions. The Court sentenced him accordingly after making certain judicial findings of fact at a sentencing hearing.
Presently before the Court is Shuler's motion pursuant to Criminal Procedure Law § 440.20 (1) to set aside his sentence and to be sentenced instead as a first-time felony offender. Citing Erlinger v United States, 602 US 821 (2024), Shuler argues that the fact-finding engaged in by the Court during the sentencing hearing violated his Sixth Amendment right to a jury trial, and citing Crawford v Washington, 541 US 36 (2004), he argues that his rights under the Confrontation Clause of the Sixth Amendment were violated as well. Procedural HistoryThe events underlying Shuler's conviction and the sentence he currently challenges arose on October 7, 2015, when he strangled and sexually abused his neighbor, E.A., in her Bronx apartment. The victim testified that after she asked Shuler to leave her apartment, he wrapped his arms around her neck, choked her, and pressed a chemical-soaked rag over her face, causing her to lose consciousness. She briefly awoke to find Shuler penetrating her vagina, observed a condom on his penis, and then passed out again. When she fully regained consciousness, the victim found herself naked and wet in her bathtub, her body bearing signs consistent with strangulation—facial swelling, burst blood vessels, and chemical burns (People v Shuler, 227 AD3d 448, 449 [1st Dept 2024] lv to appeal denied, 42 NY3d 940 [2024]).
The victim immediately reported the assault to the police and identified Shuler as her attacker. Responding officers found him hiding in a closet in his apartment and arrested him. Crime scene investigators recovered a condom wrapper from her apartment bearing Shuler's DNA.
Shuler was indicted and charged with predatory sexual assault (Penal Law § 130.95 [1] [b]), rape in the first degree (Penal Law § 130.35 [1]), four counts of sexual abuse in the first degree (Penal Law §§ 130.65 [1] and [2]), and strangulation in the second degree (Penal Law § 121.12).
After trial, on October 31, 2018, a jury convicted Shuler of four counts of sexual abuse in the first degree and strangulation in the second degree. The jury was deadlocked on the remaining charges.
At the sentencing hearing, the People filed a Persistent Violent Felony Offender Information alleging that based upon his two prior New York County convictions, Shuler qualified for enhanced sentencing as a PVFO (Steinbock-Pratt Aff., Ex. B [10:22—11:6 ("Sen. Tr.")]). Those prior convictions include a 1985 conviction for attempted robbery in the second degree (Penal Law §§ 110/160.10), a class D violent felony offense, and one in 1992 for robbery in the first degree (Penal Law § 160.15), a class B violent felony offense.
At the sentencing hearing, Shuler did not raise a constitutional challenge to the Court's fact-finding process concerning the fact of his prior convictions and periods of incarceration under Penal Law § 70.04 (the "Tolling Provision"). Instead, his challenge was limited to arguing that the People could not prove that the 1985 and 1992 convictions appearing in his criminal history record were his and that, by relying on averments in a certification, the Court violated his rights under the Confrontation Clause (Sen. Tr. 18: 20—25; 19: 1—22).
The evidence introduced at the sentencing hearing included a certified copy of Shuler's criminal history record showing, inter alia, that in connection with his 1985 class D violent felony conviction he received a 1-year incarceratory sentence. For his 1992 class B violent felony conviction, Shuler was sentenced to a 10 ½ to 21-year term of imprisonment. According to the People, the lengthy sentence on the 1992 conviction was the result of a negotiated plea packaging two indictments as one: a 1991 case charging an "Ireek Moet" with attempted murder and rape in the first degree appearing in cycle 23 of Shuler's criminal history record for which there is no reported disposition together with a cycle 22 case, in which an Ireek Moet pleaded guilty to robbery in the first degree in full satisfaction of an attempted rape indictment for which a sentence of 126 months to 21 years of incarceration was imposed (September 13, 2018, [*2]24:7—26:14).[FN3]
Those two prior convictions appear under two aliases, "Ray Love" and "Ireek Moet", respectively. The People also introduced certified copies of the certificates of disposition for each conviction.
Also introduced into evidence were certified records from the New York State Division of Criminal Justice Services ("DCJS") and New York State Department of Corrections and Community Supervision ("DOCCS"). The DCJS records consisted of a form detailing the results of a fingerprint comparison. That comparison bore the certification of a DCJS employee in which the employee certified that Shuler's fingerprint records and NYSID number in the matter before the Court matched those associated with the 1985 and 1992 violent felony convictions (Tr. 27:1—21). The certified records from DOCCS showed Shuler's dates of incarceration from March 6, 1987, to October 14, 1988, and from May 27, 1992, to October 8, 2013, in connection with those convictions.
At the hearing, defense counsel objected to the introduction of the DCJS form, arguing that it was inadmissible because it was not properly certified under Civil Practice Law and Rules §§ 2307 and 4518 and that its admission violated Shuler's constitutional rights under the Sixth Amendment's Confrontation Clause. The Court rejected that argument, finding that the form was properly certified in accordance with CPL 60.60 (2) and admissible under People v Leon, 10 NY3d 122 (2008) (citing Apprendi v. New Jersey, 530 US 466 [2000] and finding no Confrontation Clause violation under the federal constitution where the sentencing court deemed admissible, and relied upon, a "fingerprint report certifying" the results of a fingerprint comparison to adjudicate defendant a PVFO).
Based upon the evidence introduced at the sentencing hearing, the Court found beyond a reasonable doubt that Shuler was convicted of two prior violent felony offenses. The Court also concluded that the relevant periods of incarceration served to extend the ten-year lookback period under the Tolling Provision.[FN4]
Shuler was accordingly sentenced as a PVFO and the Court imposed a sentence of 25 years to life on the strangulation count, to run consecutively to concurrent terms of 15 years to life on each of the sexual abuse counts, for an aggregate term of 40 years to life.
On direct appeal, Shuler challenged the weight of the evidence supporting the verdict; several of this Court's evidentiary rulings; and this Court's denial of a defense request to submit a lesser included charge to the jury. He contested neither this Court's finding that he is a mandatory PVFO nor the Court's authority to engage in fact-finding at sentencing.
On May 7, 2024, the Appellate Division, First Department, modified the sentence (People v Shuler, 227 AD3d 448 [1st Dept 2024] lv to appeal denied, 42 NY3d 940 [2024]). [*3]"Although the imposition of consecutive sentences was proper," the First Department directed that the sentence on the strangulation count be run concurrently with the other sentences (Shuler, 227 AD3d at 449). The conviction and sentence were otherwise affirmed (id.).
Then, on June 21, 2024, the Supreme Court of the United States decided Erlinger v United States, 602 US 821 (2024). Erlinger holds that, in applying 18 U.S.C. § 924 (e), the Armed Career Criminal Act ("ACCA"), a sentencing court is not permitted to resolve "facts and circumstances which constitute the [present offense or underlying prior offenses]" (Erlinger, 602 US at 832 [citations omitted]) to enhance a sentence. Only a unanimous jury, rather than a judge, may decide whether defendants who have previously committed three violent felonies or serious drug offenses did so on "separate occasions" (the "Separate Occasions" clause) under ACCA. "[D]eciding whether those past offenses occurred on three or more different occasions is a fact-laden task" that judges are prohibited from assuming (Erlinger, 602 US at 834—835). "To hold otherwise . . . would intrude on a power the Fifth and Sixth Amendment reserve to the American People" (id.). 
Just over a month after Erlinger was decided, on August 1, 2024, the Court of Appeals denied Shuler leave to appeal (People v Shuler, 42 NY3d 940 [2024]).
The instant motion was filed thereafter.

 Legal Analysis
To begin, the general rule is clear: "[L]egislative enactments, [such as the PVFO provisions Shuler challenges here], are entitled to a strong presumption of constitutionality . . . courts strike them down only as a last unavoidable result . . . after every reasonable mode of reconciliation of the statute with the Constitution has been resorted to, and reconciliation has been found impossible" (People ex rel. Neville v Toulon, 43 NY3d 1, 9 [2024]; see also McKinney's Cons. Laws of New York, Book 1, Statutes, § 150, Comment ["It is with great reluctance and as a last resort that the courts will strike down a solemn legislative enactment on the ground that it conflicts with the state or federal Constitutions"]). Shuler's heavy burden of proving unconstitutionality can be satisfied only where that conclusion is inescapable (id., see also Overstock.com, Inc. v New York State Dept. of Taxation and Fin., 20 NY3d 586, 593 [2013] [stating that it must be proven "beyond a reasonable doubt"]). Moreover, a trial-level court (like this one) should be especially reluctant to declare a statute unconstitutional (Comiskey v Allen, 55 AD2d 304, 307 [2d Dept. 1976], affd 43 NY2d 696 [1977]).
Here, Shuler's claim that Erlinger mandates that the Tolling and other applicable provisions of New York's predicate felony statute be set aside as unconstitutional fails to meet his heavy burden to present "proof beyond a reasonable doubt" that the statute is invalid as a matter of constitutional law. The heavy nature of defendant's burden is especially important to keep in mind because Shuler is asking that violent recidivists—whom the Legislature unmistakably intends be subjected to mandatory substantially enhanced prison sentences—be treated as first-time felony offenders and released at a relatively early date.
With these constraints in mind, this Court considers Shuler's motion and concludes that Erlinger does not render New York's PVFO provisions unconstitutional—at least, not the provisions that apply here. This conclusion is based largely upon the fact that the Erlinger case centered on ACCA—a federal sentencing framework that is materially different from the sentencing provisions this Court is called upon to apply here. Relevant Supreme Court authority underscores that ACCA's use of the critical phrase "committed on occasions different from one [*4]another" (the "Separate Occasions" clause) has generated substantial uncertainty (see e.g. Wooden v United States, 595 US 360 [2022]; Shepard v United States, 544 US 13 [2005]; and Almendarez-Torres v United States, 523 US 224 [1998]); the ambiguity inherent in that provision is sufficient grounds alone to distinguish ACCA from the provisions of New York law at issue here.
The transcript of the Erlinger sentencing hearing illustrates the ACCA-ambiguity with which the sentencing court there had to grapple: there the sentencing court had a single plea agreement—not a plea allocution—that set forth a plea of guilty to four burglaries (the ostensible ACCA-qualifying offenses). That plea was entered on single date resulting in a single judgment of conviction for which Erlinger received concurrent sentences on all four burglaries. The plea agreement did not contain the specific factual basis of each of the burglary pleas (US v Paul Erlinger, No. 2:18-cr-00013 [S.D. Ind. May 16, 2022], ECF No. 120, Tr. 27: 13—16).
At the government's urging, the sentencing court in Erlinger relied upon the "charging document" which showed that although Erlinger was charged with all four burglaries on the same date, they were alleged to have occurred on different dates. Characterizing the charging document as a Shepard document (pursuant to Shepard v United States, 544 US 13 [2005]), the sentencing court relied upon it to find that the dates alleged therein were enough to satisfy ACCA's "Separate Occasions" clause requirement by a preponderance of the evidence.
In other words, the sentencing court in Erlinger did not simply find the fact of a prior conviction, nor ascertain the elements which comprise the prior conviction. Instead, the Erlinger sentencing court used what was arguably a Shepard document in an impermissible fashion, that is, to find underlying non-elemental facts as to the separate dates on which the defendant committed his prior crimes. The Supreme Court held that the sentencing court went beyond merely identifying the previous convictions or the elements required to sustain them. Instead, "[i]t had to find that those offenses occurred on at least three separate occasions" (Erlinger, 602 US at 838—839).
By way of background, in the Shepard case, the Supreme Court rejected the use of police records by a court to determine whether one of Shepard's earlier Massachusetts burglary convictions could be counted as one of three prior violent convictions under ACCA § 924 (e)(1). A prior burglary conviction under ACCA is a violent felony only if it is committed in a building or an enclosed space—not in a boat or vehicle, as the Massachusetts burglary statute additionally provides. Shepard was found guilty of burglary after a jury trial but "there were of course no jury instructions that might have narrowed the charges to the [federal elements]" (Shepard, 544 US at 17). Rejecting the sentencing court's reliance on the police report to determine whether Shepard had in fact committed burglary in a building or enclosed space, the Supreme Court held that any sentence under ACCA must rest on a showing that a "prior conviction 'necessarily' involved [and a prior plea necessarily admitted] facts equating to [] burglary" (Shepard, 544 US at 24). In other words, per Shepard, any inquiry under ACCA to determine whether a defendant admitted to or was found guilty of the elements of an offense is limited to reviewing "the terms of the charging document, the terms of the plea agreement or transcript of colloquy between the judge and defendant in which the factual basis of the plea was confirmed by the defendant, or to some comparable judicial record of this information" (Shepard, 544 US at 26) (emphasis provided). Thus, the sentencing courts in Erlinger and in Shepard both erred because they used court records and police documents, respectively, to find non-elemental facts supporting the underlying prior convictions which "facts" then served to enhance those defendants' sentences [*5]under ACCA.
In Wooden, the vagueness of ACCA's Separate Occasions Clause was again the central issue. The Supreme Court was called upon to determine whether ACCA was properly applied to enhance the sentence of William Wooden whose prior convictions consisted of 10 convictions for burglary. All 10 prior convictions stemmed from a single criminal episode in which he and two co-defendants entered unlawfully into a storage facility and stole items from ten different units by breaking through the sheet rock separating each of the units. Because the state of Georgia, where the crimes occurred, required that crimes arising from the same conduct be prosecuted together, all ten counts were charged in a single indictment. Wooden pleaded guilty to all ten counts and was sentenced to eight years on each count, all running concurrently. The government argued that these guilty pleas satisfied ACCA's three prior violent offenses requirement because they were each completed burglaries committed sequentially.
The Supreme Court reversed the lower court's determination that ACCA applied to enhance that defendant's sentence, finding that the lower court had incorrectly conflated two separate ACCA conditions: prior offenses and separate occasions. Although all ten guilty pleas may be viewed as ten separate offenses, they were not committed on separate occasions. The Supreme Court noted that the government's interpretation "can make someone a career criminal in the space of a minute" (Wooden, 595 US at 369).
These cases together show the kind of fact-finding that is prohibited under Erlinger: courts may not engage in judicial fact finding concerning the underlying non-elemental facts or elemental circumstances of prior convictions when such findings increase the permissible sentencing range because those kinds of facts [i.e., those that can be relied upon to enhance a sentence under ACCA] are reserved for jury determinations or explicit and specific admissions of guilt by a defendant.
Despite the sweeping language in Erlinger prohibiting a court from finding "[v]irtually any fact that 'increase[s] the prescribed range of penalties to which a criminal defendant is exposed'" (Erlinger, 602 US at 834 [internal citation omitted]), the holding of Erlinger is limited to the "Separate Occasions" inquiry under ACCA. Equally important, in Erlinger, the Supreme Court expressly acknowledges that a judge is nevertheless still permitted "to undertake the job of finding the fact of a prior conviction—and that job alone" (Erlinger, 602 US at 837, citing Almendarez-Torres v United States, 523 US 224 [1998]) and to do so by consulting a "'restricted set of materials' [] that include judicial records, plea agreements, and colloquies between a judge and the defendant" (Erlinger, 602 US at 839, citing cases including Shepard, 544 US at 26). That is all this Court did in adjudicating Shuler a PVFO pursuant to the Tolling Provision.
As Judge Statsinger notes in People v Rivera, 85 Misc 3d 1032 (Sup Ct, New York County, Statsinger, J., October 28, 2024), Erlinger is "very much grounded in the type of facts necessary to the Occasions Clause inquiry, this being the core difference between the Occasions Clause determination [under ACCA] and the seemingly simple determination of whether a prior conviction existed at all" (Rivera, 85 Misc 3d at 1037—1038).
This Court agrees with Judge Statsinger's conclusion that there is "no logical distinction—certainly not one that would trigger the constitutional right to a jury trial—between a judicial finding of the fact of a prior conviction (Penal Law § 70.06 [1] [b] [ii]), which can be made by the judge without controversy—and the fact of a prior incarceration (and the relevant dates), which triggers the Tolling Provision" (Rivera, 85 Misc 3d at 1037). A determination of facts concerning underlying circumstances or non-elemental facts of prior convictions is [*6]significantly different from the administrative, records based determination made by this Court regarding the dates of prior convictions, the periods of incarceration actually served, any resulting tolling of the ten year lookback period, and even the use of fingerprint cards to establish identity (see People v Leon, 10 NY3d 122 [2008]).
Thus, Shuler's sentencing in the instant case suffered no constitutional violation under Erlinger. This Court did not engage in an analysis, for example, of Shuler's 1992 robbery conviction in order to arrive at the conclusion that Shuler had in fact committed felonies on three separate occasions (given that his plea in that year had resolved two indictments). The New York sentencing provisions here make such an analysis irrelevant and look only to dates of the judgments of conviction, dates of sentence, and periods of incarceration, prohibiting any consideration of underlying circumstances or non-elemental "facts".
This Court based its findings upon a "restricted set of materials," (Erlinger, 602 US at 839)—specifically, as already noted, certified copies of certificates of disposition, Shuler's criminal history record, and DCJS and DOCCS records—to make an administrative, records based determination that the two prior violent felony convictions appearing on Shuler's criminal history record are in fact his and that despite being over 10 years old, those prior convictions should still serve to enhance his sentence. These determinations do not violate the federal or state constitutions.
Accordingly, the Court denies Shuler's motion to set aside his sentence.
For reasons already stated on the record at sentencing, the Court also denies defendant's motion premised upon this Court's alleged violation of the Confrontation Clause of the Sixth Amendment to the U.S. Constitution.
In sum and for all of the reasons stated herein, defendant's motion to set aside his sentence pursuant to CPL 440.20 is denied in its entirety.
This constitutes the Decision and Order of the Court.
Dated: January 30, 2026Bronx, New YorkJeanette Rodriguez-Morick

Footnotes

Footnote 1:The original Decision and Order, dated January 29, 2026, was amended only to correct citation references and a misspelling. 

Footnote 2:In connection with this motion, the Court read and considered the following: Defendant's Notice of Motion and Affidavit in Support, dated December 19, 2024, by Samuel Steinbock-Pratt, Esq ("Steinbock-Pratt Aff."), with exhibits; Defendant's Memorandum of Law dated December 19, 2024 ("Steinbock-Pratt Memo."); the People's Affirmation in Opposition by Assistant District Attorney Joshua P. Weiss, dated April 10, 2025 ("Weiss Aff."), with exhibits; the People's Memorandum of Law in Opposition, dated April 10, 2025 ("Weiss Memo."); Defendant's Reply Memorandum of Law, dated April 17, 2025 ("Steinbock-Pratt Reply"), with exhibits; the transcript of the sentencing hearing held on December 10, 2018 ("Tr."); and the court file.

Footnote 3:This citation refers to the transcript of the pre-trial proceedings held before the Court on the referenced date. Only the fact of the single 1992 conviction for a class B violent felony offense and the duration of its corresponding sentence were given any weight by this Court.

Footnote 4:Penal Law § 70.04 (1) (b) (iv) states, in relevant part, that "[f]or purposes of determining whether a prior conviction is a predicate violent felony conviction . . . [, the] sentence must have been imposed not more than ten years before commission of the felony of which the defendant presently stands convicted." Section 70.04 (1) (b) (v) excludes from that ten-year calculation "any period of time during which the person was incarcerated for any reason."